535 A.2d 77

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee,

v.

Raymond W. WYSOCKI, Appellant.

Supreme Court of Pennsylvania.

Argued May 15, 1987.

Decided Dec. 28, 1987.

Gary Neil Asteak, Harold J.J. Dewalt, Easton, for appellant.

Michael R. Deckman, Spencer A. Manthrope, Jay C. Waldman, Dept. of Transp., Harold Cramer, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The instant appeal presents a challenge to the validity of a driver's license suspension for refusal to submit to a

breathalyzer test after the licensee was arrested at a roadblock, conducted by the State Police in an attempt to detect drivers operating motor vehicles under the influence of alcoholic beverages. Central to the appellant's challenge is his assertion that the roadblock was unconstitutional.

Appellant Raymond Wysocki's vehicle was stopped in the early morning hours of July 10, 1983, at a "traffic check" being conducted by six State Troopers on Route 512 in Hanover Township, Northampton County. The purpose of the roadblock was to enforce the "Drunk Driving Law" and to check driver's licenses, registration insurance cards and inspection stickers. All vehicles travelling in either direction were stopped unless all six troopers were occupied with other vehicles. The trooper who stopped Wysocki noticed the odor of alcohol on his breath. Wysocki had difficulty producing his license, registration and insurance cards. He was requested to perform two field sobriety tests but was unable to perform either test. Wysocki was then arrested and taken to the Bethlehem State Police Barracks, where he was asked to submit to a breathalyzer test. Wysocki refused. A criminal complaint subsequently filed against him was dismissed for lack of evidence after a preliminary hearing. On September 8, 1983, the Director of the Pennsylvania Bureau of Traffic Safety notified Wysocki that his operating privileges were suspended for one year in consequence of Wysocki's refusal to take a breathalyzer test in violation of section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547. Wysocki appealed, challenging the constitutionality of the roadblock. The Court of Common Pleas of Northampton County affirmed the license suspension. That decision was subsequently affirmed by the Commonwealth Court. *Wysocki v. Commonwealth, Department of Transportation,* 91 Pa.Commw. 42, 496 A.2d 897 (1985). This Court granted Wysocki's petition for allowance of appeal.

Permission to operate a motor vehicle upon the highways of this Commonwealth is a privilege subject to such conditions as the legislature may see fit to impose. *Com-*

*monwealth v. Funk*, 323 Pa. 390, 186 A. 65 (1936). Among the conditions prescribed by the General Assembly is the "implied consent" to submit to chemical testing pursuant to section 1547 of the Vehicle Code, which provides in pertinent part:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

**(b) Suspension for refusal.—**

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

75 Pa.C.S. § 1547(a), (b).

█ In the instant case appellant was "placed under arrest for a violation of section 3731 [of the Vehicle Code, 75 Pa.C.S. § 3731]," and refused to submit to a breathalyzer test. Pursuant to section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1), his license was therefore suspended for a period of twelve months. Appellant does not question the fact that the police had reasonable grounds to request a breathalyzer test or that he refused to comply with such a request. He argues, however, that his arrest was tainted by an illegal stop of his vehicle; and attempts to invoke the exclusionary rule as a bar to consideration in the subsequent administrative license suspension proceedings of his refusal to submit to the breathalyzer test. We reject his position.

We need not here consider the appellant's assertion that the police roadblock was unconstitutional, because that question has no bearing on the resolution of this case. This Court, in interpreting the predecessor of section 1547, held that the term "arrest" as employed in that statute merely referred to the physical act of arrest.[1] *Glass v. Commonwealth, Department of Transportation, Bureau of Traffic Safety*, 460 Pa. 362, 333 A.2d 768 (1975). Thus, for purposes of a license suspension proceeding for refusal to submit to a breathalyzer test, the legality of the arrest was immaterial. We see no reason why a different result should obtain under the present statute, which continues the use of the term "arrest."

Appellant acknowledges our holding in *Glass* but seeks to distinguish that decision on the ground that the arrest in that case suffered only from a statutory or procedural defect, whereas in the instant case the arrest is alleged to have been unconstitutional. We reject the contention that the principles enunciated in *Glass* should be so limited. Properly viewed, the issue in the instant case, as it was in *Glass*, is the power of the Department of Transportation to

1. The predecessor to 75 Pa.C.S. § 1547 was section 624.1(a) of the Act of April 29, 1959, P.L. 58, *as amended*, 75 P.S. § 624.1(a).

suspend a driver's license, which is conferred by the implied consent law. That authority is not conditioned on the validity of the arrest which gives rise to the request for a breathalyzer test. We specifically held in *Glass* that the legislature did not intend to engraft the requirements of the exclusionary rule onto the statute in question. In so holding we distinguished the case of a refusal to submit to the test from the situation in which a driver actually submits to the breathalyzer after an illegal arrest and the *results* of that test are subsequently offered as evidence in a criminal proceeding. Where the results of the test are being used as evidence in a criminal trial, it is properly excluded in that proceeding if it is found to be the fruit of an illegal arrest. The basis for employing the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. The only fact necessary to the administrative determination is the driver's refusal to comply with the breathalyzer request after being taken into custody.

■ The conclusion that the illegality of the initial detention does not in and of itself preclude the suspension of the operating privileges does not end the instant inquiry. Although section 1547 established an "implied consent" on the part of the motorist, subsection (a)(1) authorizes a request for a breathalyzer test only "if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle: (1) while under the influence of alcohol...."

Thus, although the fact that the initial stop may have been improper would not necessarily prevent a suspension of license where there was a subsequent refusal to submit to a breathalyzer test, such a suspension will not be allowed if the officer's request was not supported by reasonable grounds for the officer to have believed that the person was under the influence of alcohol.

In this instance, the officer noticed the odor of alcohol on the breath of Mr. Wysocki at the time that his vehicle was stopped. Wysocki exhibited confusion in responding to the simple request to produce his license, registration and insurance cards. He was then requested to perform two field sobriety tests which he was also unable to do. At that point it is clear that the officer had reasonable grounds to make the request that Mr. Wysocki submit to a breathalyzer test. To have permitted appellant to leave the scene in that vehicle in the condition he was then in would have exhibited a callous disregard for the safety of any other citizen he might have encountered on his way. This record reveals that the officer had more than reasonable grounds to believe that appellant was under the influence when the request was first made to submit to a breathalyzer test. Thus the statutory prerequisite to request appellant to submit to such a test was satisfied and the subsequent suspension was proper.[2]

Accordingly, the order of the Commonwealth Court is affirmed.

HUTCHINSON, J., did not participate in the decision of this case.

PAPADAKOS, J., files a dissenting opinion.

2. In his dissenting opinion, Mr. Justice Papadakos suggests that our result creates an unfairness because there is no provision for the suspension of the license if the driver took the breathalyzer test and the results were positive. The fact that the legislature has failed to provide an administrative remedy for the suspension of the license for a positive reading where the arrest is subsequently deemed illegal does not permit us to ignore the provision that has been clearly articulated. Any perceived iniquities within the Vehicle Code are properly within the province of the legislature to correct.

PAPADAKOS, Justice, dissenting.

I must dissent. The majority opinion compels a conclusion that a police officer can stop anyone, anyplace, anytime of the day or night, *for no articulable reason at all,* and *then* form a reasonable belief that the person so stopped, whether in or about *anyone's* motor vehicle, has been driving while under the influence of alcohol in violation of 75 Pa.C.S. 3731. The police officer can then subject the person to arrest for violating Section 3731, take the person to a breathalyzer station and order the person to undergo a breathalyzer test. If the person refuses, the driver's license is suspended for one year. But if the person is wise to our ways, the person will take the breathalyzer test and *no matter what its reading,* it must be suppressed because of the illegal stop and the license cannot be suspended.

The majority authorizes this abhorrent governmental intrusion upon us with the excuse that the proceedings arising out of this police state action involve nothing more than administrative agencies and, because of the admitted illegal stop, cannot result in a criminal prosecution.

Section 6308(a) of the Motor Vehicle Code, 75 Pa.C.S. 6308(a) states: *"(a) Duty of operator or pedestrian.*—The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer...."

To me, this is a clear signal from the Legislature that our police are not empowered to stop anyone within the context of the Motor Vehicle Code unless they have a reasonable belief that the person to be stopped has violated any provision of the Motor Vehicle Code.

When police illegally discover a driver who they reasonably believe to have been driving while under the influence, they should prevent his further driving in that condition and thus avoid exhibiting any callous disregard for the safety of any other citizen upon the highway. To protect the innocent traveller, there is no need to commit illegal acts upon the presumed wrongdoer.