Lesa **NORNHOLD**

v.

**COMMONWEALTH** of Pennsylvania, **DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.

Decided Aug. 22, 2005.

Terrance M. Edwards, Asst. Counsel, Harrisburg, for appellant.

Lynn Erickson, Leesport, for appellee.

BEFORE: SMITH–RIBNER, J., LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of the 17th Judicial District, Snyder County Branch (trial court) that sustained the statutory appeal of Lesa Nornhold (Nornhold) from a one-year suspension of her operating privilege pursuant to Section 1547 of the Vehicle Code (Implied Consent Law).[1]

On October 7, 2003, Trooper Michael R. Connelly and his partner, Trooper Rarig, were on uniformed patrol in a marked state police vehicle. At approximately 1:15 a.m., they observed a vehicle traveling west on Pine Street in the Borough of Selinsgrove, which then made an unsignalled right turn onto Orange Street where it traveled, illegally, on the left side of the two-lane street. From Orange Street, the vehicle turned onto West Snyder Street, a one-way street, and parked on the left side of the road. The two officers decided to investigate the traffic violations they had observed.

As Trooper Connelly pulled up next to the parked vehicle, the passenger door opened and struck the rear fender of the patrol car, causing minor damage. Trooper Connelly got out of his car and began speaking with the passenger. While he was doing so, the driver, Nornhold, exited and walked across the street. Trooper Rarig asked her to stop several times, but she did not do so; instead, she entered her home on West Snyder Street.

Trooper Connelly followed and knocked on Nornhold's door. When Nornhold answered the door, Trooper Connelly asked to see her driver's license, owner's card and proof of insurance. A now belligerent Nornhold refused and attempted to close the door, prompting Trooper Connelly to enter Nornhold's home. Trooper Connelly explained to Nornhold that her vehicle had been involved in a traffic accident and that she was required to produce the requested documentation. When Nornhold attempted to go upstairs, Trooper Connelly restrained her and escorted her back downstairs. At this point in the encounter with Nornhold, Trooper Connelly detected the smell of alcohol. He also noticed that her eyes were bloodshot and that she did not appear to have complete control over her

1. It states that "[i]f any person placed under arrest for [driving under the influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person ... for a period of 12 months." 75 Pa.C.S. § 1547(b)(1)(i).

physical movement.[2] Based upon these observations, as well as Nornhold's erratic driving, Trooper Connelly decided to initiate an investigation for driving under the influence of alcohol.

Trooper Connelly escorted Nornhold to her vehicle to locate the requested documentation. While outside, he administered a preliminary breath test which registered a blood alcohol content (BAC) of .27%. Nornhold failed two field sobriety tests and refused to perform a third, at which point Trooper Connelly arrested her for driving under the influence (DUI) and transported her to the State Police Barracks at Selinsgrove. Nornhold was unable to provide two valid breath samples, resulting in a deemed refusal to submit to chemical testing.

By notice dated December 11, 2003, the Department informed Nornhold that her operating privilege was being suspended for a period of one year pursuant to the Implied Consent Law. Nornhold filed a statutory appeal, contending that the arresting officer did not have a sufficient basis to believe that she was under the influence of alcohol or to request a chemical test. Following a de novo hearing, the trial court found that Nornhold's arrest was unlawful and sustained her appeal.

The Department appealed to this Court and submitted a concise statement of matters complained of on appeal. See Pa. R.A.P.1925(b). Upon further review, the trial court reaffirmed its earlier conclusion that Nornhold was under "arrest in fact" when Trooper Connelly restrained her from going upstairs. Nevertheless, the trial court concluded that the legality of Nornhold's arrest was irrelevant since Trooper Connelly had reasonable grounds to believe that she had been driving while under the influence of alcohol when he requested her to take a breathalyzer test. The trial court acknowledged its error in sustaining Nornhold's statutory appeal and invited this Court to correct that error.[3]

■ On appeal to this court, the Department presents three issues for our consideration.[4] First, it contends the trial court erred in concluding that an arrest in fact had occurred when Trooper Connelly detained Nornhold in her residence. It contends that the Troopers testimony established that he did not intend to effect an arrest until after he had established reasonable cause, i.e., until Nornhold failed the two field sobriety tests and registered a 0.27 BAC on the pre-arrest breathalyzer test. Second, the Department argues that the trial court erred in concluding that Trooper Connelly had to form reasonable grounds that Nornhold committed a DUI offense before he arrested her. Third, the Department contends that Nornhold failed

2. Trooper Connelly recalled that Nornhold's emotions "were all over the board," ranging from anger to crying and pleading. Reproduced Record at 21a (R.R. ——). For her part, Nornhold denied using the "F" word but conceded she had not been cooperative but, rather, "hysterical." R.R. 55a.

3. The Department requested this Court to remand the matter so that the trial court could vacate its prior order and enter a new order dismissing Nornhold's appeal. By order dated August 10, 2004, this Court denied the Department's motion and directed that the issue of the appropriateness of remand be consolidated with the merits of the Department's appeal. Because of our final disposition of this case, we need not address the remand issue.

4. In reviewing a decision of the trial court in a license suspension case, the standard of review of an appellate court is to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion. Hasson v. Department of Transportation, Bureau of Driver Licensing, 866 A.2d 1181, 1185 (Pa.Cmwlth.2005).

to satisfy her burden of proving that she was physically unable to consent to chemical testing.[5]

■ We consider, first, the Department's claim that the trial court erred in finding that Nornhold was placed under arrest in her home. In order to sustain a one-year license suspension under 75 Pa. C.S. § 1547(b)(1), it is necessary for the Department to prove that the licensee "was *arrested* for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol." *Banner v. Department of Transportation, Bureau of Driver Licensing,* 558 Pa. 439, 445, 737 A.2d 1203, 1206 (1999) (emphasis added).[6] An arrest for purposes of Section 1547 has been defined as any act that indicates an intention to take a person into custody and subjects that person to the actual control and will of the arresting officer. *Glass v. Department of Transportation, Bureau of Traffic Safety,* 460 Pa. 362, 366, 333 A.2d 768, 770 (1975).[7] Whether a licensee has been placed under arrest for purposes of Section 1547 is a factual rather than a legal determination. *Welcome v. Department of Transportation, Bureau of Driver*

*Licensing,* 167 Pa.Cmwlth. 245, 647 A.2d 971, 974 (1994). In making this determination, the inquiry focuses on whether the licensee should infer from the totality of the circumstances that she is under the custody and control of the police officer. *Pappas v. Department of Transportation, Bureau of Driver Licensing,* 669 A.2d 504, 507 (Pa.Cmwlth.1996).

■ In the present case, the trial court found that Trooper Connelly arrested Nornhold in her home. We agree. Trooper Connelly's act of physically restraining Nornhold from going upstairs certainly indicated an intention to subject Nornhold to his actual control. *Glass.* Given the totality of the circumstances, it would have been entirely reasonable for Nornhold to draw that inference. Notably Trooper Connelly acknowledged that Nornhold's demeanor changed "180 degrees" at this point in the encounter, another indicator of submission. R.R. 20a. Irrespective of when Trooper Connelly believed he effected an arrest, the trial courts finding is supported by the record and we shall not disturb that finding.[8]

Next, the Department challenges the trial court's finding that Nornhold's arrest was unlawful because Trooper Connelly

---

**5.** We have reordered the Department's issues for purposes of our analysis.

**6.** The Department must also prove that the licensee was asked to submit to a chemical test, refused to do so and was warned that refusal might result in a license suspension. *Banner,* 558 Pa. at 445, 737 A.2d at 1206.

**7.** In *Glass,* our Supreme Court considered the meaning of the term "arrest" under a prior codification of the Implied Consent Law, which, like its present counterpart, required that a licensee be "placed under [a]rrest and charged with the operation of a motor vehicle ... while under the influence of intoxicating liquor." *Glass,* 460 Pa. at 365, 333 A.2d at 769. The court distinguished an "arrest" for

purposes of the Implied Consent Law, as defined above, from a "lawful arrest" in a criminal law proceeding. The Court concluded that the Secretary of Transportation's power to suspend one's license is not dependent upon the legality of the seizure of the person.

**8.** At oral argument, the Department argued that Trooper Connelly's act of restraining Nornhold inside her home constituted an "investigative detention" or "investigative stop." We fail to see how this argument advances the Department's case. An "investigative stop" is a criminal law concept and implicates constitutional rights. *See Commonwealth v. Mendenhall,* 552 Pa. 484, 715 A.2d 1117 (1998). A license suspension is a civil proceeding.

formed reasonable grounds to believe she had committed a DUI offense *after* the arrest. The trial court sustained Nornhold's statutory appeal on this ground but later admitted it had erred after reconsidering its decision in light of *Department of Transportation v. Wysocki*, 517 Pa. 175, 535 A.2d 77 (1987). The Department argues that it matters not whether Trooper Connelly arrested Nornhold for DUI before or after he developed reasonable grounds to believe she had driven her vehicle while intoxicated. In support, the Department also cites to *Wysocki.*

Nornhold counters that because Trooper Connelly arrested her before he had reasonable grounds to believe she had operated a motor vehicle while under the influence of alcohol, the Trooper was not justified in asking her to submit to a breathalyzer test. Nornhold attempts to distinguish the present case from *Wysocki* and its progeny by arguing that a traffic stop cannot be equated with "barging into a home and assaulting a citizen." Nornhold's Brief at 9. She contends that because the Trooper had no reasonable suspicion of *anything* prior to the arrest, there is nothing in the law that authorized him to enter her residence to conduct an investigation without a warrant.[9] These arguments are properly directed to the court of common pleas in a criminal proceeding since they relate to the *legality* of Nornhold's arrest. They have no bearing in the context of a license suspension, which is a civil proceeding.

We agree with the trial court and the Department that *Wysocki* is controlling. In *Wysocki*, the licensee was arrested at a DUI checkpoint and refused to consent to chemical testing. His license was suspended under the Implied Consent Law. Wysocki alleged that his arrest was unconstitutional and, on that basis, attempted to distinguish his situation from that in *Glass*, where the arrest suffered only from a statutory or procedural defect. The Supreme Court rejected Wysocki's contention and held as follows:

> Properly viewed, the issue in the instant case, as it was in *Glass*, is the power of the Department of Transportation to suspend a driver's license, which is conferred by the implied consent law. *That authority is not conditioned on the validity of the arrest which gives rise to the request for a breathalyzer test. ...* Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. *The only fact necessary to the administrative determination is the driver's refusal to comply with the breathalyzer request after being taken into custody.*

*Wysocki*, 517 Pa. at 179–180, 535 A.2d at 79 (emphasis added).[10]

---

9. Nornhold's argument does not address the fact that Nornhold was observed committing moving violations of the Vehicle Code, which led to her investigation and encounter with Troopers Connelly and Rarig.

10. Numerous decisions of this Court following *Wysocki* have reiterated the now well-settled axiom that the legality of an arrest is immaterial in a civil license suspension proceeding. *See, e.g., Menosky v. Commonwealth,*

121 Pa.Cmwlth. 464, 550 A.2d 1372 (1988)(warrantless entry into licensee's home did not preclude suspension of licensee's operating privileges); *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992) (constitutional attacks on the traffic stop have no bearing on the resolution of a license suspension appeal); *Stein v. Department of Transportation, Bureau of Driver Licensing*, 857 A.2d 719 (Pa.Cmwlth.2004) (unconstitu-

Nornhold's attempt to distinguish *Wysocki* is unavailing; the language quoted above is dispositive here.[11] The legality of the underlying arrest, including the timing of Trooper Connelly's accompanying request to submit to chemical testing, is irrelevant to determining the propriety of Nornhold's license suspension under the Implied Consent Law. It is sufficient that Trooper Connelly developed reasonable grounds to believe Nornhold had committed a DUI offense at any point during their encounter. *See also Department of Transportation, Bureau of Traffic Safety v. Stewart*, 107 Pa.Cmwlth. 200, 527 A.2d 1119, 1120 (1987) ("The inquiry is not whether the officer, as he approached the scene, had reasonable grounds, rather it is whether, *at any time* during the course of interaction between the officer and [licensee], the officer was given reasonable grounds to believe he was driving under the influence of alcohol.") (emphasis original).[12]

Finally, the Department contends that because it satisfied all the elements of its *prima facie* case through the testimony of Trooper Connelly, the burden shifted to Nornhold to prove either that her refusal was not knowing and conscious or that she was physically unable to consent to chemical testing at the State Police barracks. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 198, 723 A.2d 655, 658 (1999). The Department contends that Claimant failed to satisfy her burden of proof. Nornhold does not contest that the Department satisfied its *prima facie* burden of proof, nor does she raise any issue regarding her physical or mental capacity. Therefore,

tional arrest does not preclude suspension of driver's license).

**11.** The dissent agrees with Nornhold, noting that the facts in this case "are so outrageous and so shockingly at odds with all accepted rules of law relating to searches and seizures" that they cannot be sanctioned under *Wysocki*. Dissenting Opinion at 4, 7.

First, the trial court did not find that the conduct of Trooper Connelly was excessive under the circumstances. At the conclusion of the hearing, the trial court observed:

I think the officer, as opposed to being indirectly criticized, *should be complimented* that he didn't jump the gun, so-to-speak, that he was waiting to see what else was there, if any—anything to determine whether the Petitioner was under the influence of alcohol.

R.R. 72a.
Second, if, as a matter of fact, Nornhold was the victim of excessive police conduct, she has remedies. She may be able to suppress evidence regarding her alleged DUI in a criminal proceeding, should she be so charged. Nornhold may be able to seek redress in a Section 1983 action. However, under *Wysocki*, Nornhold may not, as another remedy, continue to enjoy her privilege to operate a motor vehicle.

*Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269 (1994), on which the dissent relies, is inapposite because it involves a suppression motion in a criminal case. The exclusion of unlawfully seized evidence is not a personal constitutional right, but a judicially created remedy. *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The United States Supreme Court has never applied the exclusionary rule in a civil proceeding. *United States v. Janis*, 428 U.S. 433, 447, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (noting that it has never applied the exclusionary rule in a civil proceeding, state or local).

**12.** In addition to an "arrest" for DUI, Section 1547(b)(1) also requires that the officer have reasonable grounds to believe that the licensee operated a vehicle while under the influence of alcohol. *Banner*, 558 Pa. at 445, 737 A.2d at 1206. In the present case, Trooper Connelly observed several indicia of intoxication: Nornhold's erratic driving, her unsteady gait, mood swings, bloodshot eyes and an odor of alcohol about her person. Based on the foregoing, we agree with the trial court that Trooper Connelly had the requisite reasonable grounds to request that Nornhold submit to a breathalyzer test. Thus, the Section 1547(b)(1) requirements were satisfied.

since Nornhold has effectively conceded these points, we need not address the Department's final issue.[13]

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 22nd day of August, 2005, the order of the Court of Common Pleas of the 17th Judicial District, Snyder County Branch, dated May 17, 2004, in the above-captioned matter is hereby reversed.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

This case involves nothing less than a totally illegal home invasion perpetrated by the police, which the majority sanctions by upholding a suspension of Lesa Nornhold's driving privileges for her refusal to submit to chemical testing. Therefore, I dissent from the majority's conclusion that this case is no different from others where the legality of an arrest has been held to be irrelevant to whether the Department of Transportation (Department) met its burden in a chemical testing refusal case. The Department asserts that nothing occurred here that should shock the conscience of the Court, but I vehemently disagree.

The Department stresses in its brief certain findings made by the trial court that were consistent with the testimony of Trooper Michael Connelly and on some points inconsistent with that of Nornhold, the driver whose license was suspended, and of Shane Vanscyoc, her passenger. The following recitation of facts is in accordance with Trooper Connelly's testimony or with points on which there was no disagreement. Trooper Connelly testified that around 1:15 a.m. he observed the car driven by Nornhold make a turn on to Orange Street without signaling; that it traveled on the left side of Orange Street, which is a two-lane, unmarked roadway, with no other traffic on the road, and that it then made a left turn on to a one-way street and parked near the end, on the left side, where parking was permitted on both sides. Trooper Connelly never activated his overhead lights, and Nornhold was not pulled over by the police. Trooper Connelly pulled alongside the parked vehicle, and when he did so the passenger door of Nornhold's vehicle opened and made contact with the rear wheel well of the police vehicle, resulting in very minor damage, which Trooper Connelly agreed was a "scratch" that could be buffed out. Trooper Connelly discussed the incident with Vanscyoc.

Trooper Connelly testified that during that discussion Nornhold got out of the vehicle and walked across the street to her house and opened the door with a key and entered. He stated that the other trooper called to Nornhold to stop, guessing it was five or six times, but she ignored him and

---

13. Nornhold does argue in her brief to this Court that Trooper Connelly failed to adequately advise her of her rights, and this omission provides an alternate ground to affirm the trial court's order. Specifically, Nornhold claims that the Trooper only advised her of Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547 and did not provide her with the warnings enumerated in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Trooper Connelly testified, however, that he recited both Section 1547 and the *O'Connell* warnings, and Nornhold signed an acknowledgement to that effect. Nornhold did not rebut Trooper Connelly's testimony, and upon being questioned about the reading of her rights, stated, "[i]t's all a blur to me, but yes, he read some things to me." R.R. 58a. As Nornhold did not rebut or challenge the Trooper's testimony and corroborating evidence, we lack a basis in the record to affirm the trial court on the alternate grounds suggested by Nornhold.

went into the residence. According to Trooper Connelly's testimony, therefore, the troopers made no other effort to stop and question Nornhold before she entered her house. The trial court accepted Trooper Connelly's statement that shortly thereafter he knocked on the door. Nornhold answered, and Trooper Connelly advised her that he needed to see her driver's license, owner's card and insurance card. He testified that Nornhold screamed at him that he did not need to see those cards and attempted to close the door in his face. Trooper Connelly testified that he stopped the door from closing, that Nornhold retreated into her house and that he followed her.

Trooper Connelly stated that Nornhold profanely told him to leave her house but that he attempted to explain to her that her car had been involved in an accident and that she was required to produce those cards. He testified that she attempted to go upstairs in her home, but he followed her until he caught her halfway up the stairs, grabbed her and then escorted her down the stairs. According to the trooper, his purpose in knocking on the door was "[t]o obtain her driver's information for the purpose of accident investigation." N.T. at 32. He stated that he told her why he needed the information after he stopped her slamming the door in his face and followed her into the house, thus indicating that he did not announce his identity and authority and purpose when he knocked. *Id.* When Trooper Connelly grabbed Nornhold on the stairs she fell. *Id.* at 33. When he restrained her he came close to her and smelled alcohol on her breath, and he decided at that point that she might be intoxicated and that he should begin an investigation for DUI. *Id.* at 34. After some searching, Nornhold found her purse and produced her driver's license. Trooper Connelly escorted her out to her car to retrieve the registration

and insurance cards. He then conducted field sobriety tests and placed Nornhold under arrest. At the State Police barracks Trooper Connelly recorded Nornhold's responses to attempts to administer breath tests as refusals.

The Department relies on *Department of Transportation v. Wysocki,* 517 Pa. 175, 535 A.2d 77 (1987), and its progeny. In *Wysocki* a driver sought to challenge his suspension for refusal to submit to chemical testing by challenging the constitutionality of the roadblock that led to his arrest. The Supreme Court held that the Department's authority to suspend a driver's license, conferred by the law known as the Implied Consent Law, Section 1547 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1547, was not conditioned on the validity of the arrest that gave rise to the request for the breathalyzer test and that the only fact necessary to the administrative determination was the driver's refusal to comply with the breathalyzer request after being taken into custody.

. In my view, what occurred in this case was so outrageous and so shockingly at odds with all accepted rules of law relating to searches and seizures and arrests in the home as to render these circumstances qualitatively different from an ordinary situation where a challenge is raised to some aspect of an arrest. First, I note that Trooper Connelly offered no legal rationale to support his admittedly forcible entry into Nornhold's home when he prevented her from closing the door and acted contrary to her express direction not to enter her house. He stated that his object was to secure driver's and automobile information from her in regard to the "accident" he was investigating, but he did not explain why he was privileged to enter her house against her wishes and without a warrant.

Section 6308 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 6308, provides in Subsection (b) that whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of the Vehicle Code is occurring or has occurred, he or she may stop a vehicle upon request or signal to check the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license or to secure such other information as the officer may reasonably believe to be necessary to enforce the Vehicle Code. This provision authorizes stopping a vehicle on the road and checking information, but that is not what happened in this case. Here although the trooper claimed to have witnessed violations, he chose not to stop the car, and Nornhold arrived safely home and parked and entered her house. Nothing in Section 6308(b) authorizes forcible, warrantless entry into a person's home to check the specified information.

Similarly, Sections 3743 and 3744 of the Vehicle Code, *as amended*, 75 Pa.C.S. §§ 3743 and 3744, require the driver of a motor vehicle that is involved in an accident resulting only in damage to a vehicle or other property that is driven or attended by another person to remain at the scene and to provide his or her name, address, registration number of the vehicle and upon request to exhibit his or her driver's license and insurance information to the person attending the vehicle or to any police officer at the scene investigating the accident. Nothing in these substantive provisions, however, states or *implies that* all normal rules regarding searches are simply abrogated if a police officer seeks this particular information.

The Supreme Court reviewed the law relating to a warrantless entry of a residence in *Commonwealth v. Roland*, 535

Pa. 595, 599–600, 637 A.2d 269, 270–271 (1994) (citations omitted):

In a private home, "searches and seizures without a warrant are presumptively unreasonable...." Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. In determining whether exigent circumstances exist, a number of factors are to be considered. As stated in *Commonwealth v. Wagner*, 486 Pa. 548, 557, 406 A.2d 1026, 1031 (1979),

Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. Nevertheless, "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests."

. . . .

As stated in *Welsh v. Wisconsin*, 466 U.S. [740] at 750–53, 104 S.Ct. [2091] at 2098–99, 80 L.Ed.2d [732] at 743–45,

Before agents of the government may invade the sanctity of the home, the

burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.

. . . .

[I]t is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.

... [A]pplication of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed.

The Department argues that exigent circumstances demanded that Trooper Connelly remain in the residence to convert his investigation from one involving damage to the patrol car to one involving possible DUI, because blood alcohol content dissipates. I note that this argument does not even claim that exigent circumstances justified the initial forcible, warrantless entry. According to the trooper's own testimony he was doing nothing more than seeking information regarding the accident investigation when he went to the door and when he entered, and he formed the intent to investigate for DUI after that. He was not investigating any crime, and the "accident" involved was a scratch to a wheel well. Even assuming that Trooper Connelly was investigating for DUI when he knocked, the Department has suggested nothing more than that it would be difficult to obtain a timely warrant under the circumstances, not that it would be impossible.

That the entry was forcible is beyond dispute. Remarkably, the Department asserts that Trooper Connelly did nothing shocking: "He. did not break down the door and he did not do anything worse once inside than to ask Nornhold to find her driver's license, vehicle registration and insurance card." Brief of Appellant at 33. This is contrary to the trooper's testimony that when Nornold attempted to slam the door in his face, "I stopped the door from that, and as she retreated into the house, I followed her in." N.T. at 8. Thus, but for his forcibly preventing it, Nornhold would have closed the door. Further, once inside, he rejected repeated orders from Nornhold for him to get out of her house, and when she tried to go up the stairs he pursued her and grabbed her, causing her to fall, and then escorted her back downstairs. As a uniformed state trooper, Trooper Connelly in all likelihood was armed during this encounter, and in view of the normal considerations regarding warrantless entry into a residence discussed in *Roland,* which principles must be applied by one entrusted with the authority of a state trooper, there is no question that Trooper Connelly's unjustified actions went beyond the merely unreasonable and into the realm of the shocking.

I recognize that in cases such as *Wysocki,* with its challenge to the constitutionality of a roadblock, and *Menosky v. Commonwealth,* 121 Pa.Cmwlth. 464, 550 A.2d 1372 (1988), where a son led police into the house of the owner of a van that struck a pole, the courts have held that a lawful arrest is not a prerequisite to a valid license suspension proceeding. Nevertheless, I believe that even the court that decided *Wysocki* would not grant tacit approval to the utterly outrageous conduct of the State Trooper in this particular case and would hold that such conduct may not form the basis for any legitimate request for testing. The conduct of the police in this case should not be endorsed by any court. Therefore, I dissent.