# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason A. Lizotte,                            :
                                             :
                    Appellant                :
                                             :
            v.                               : No. 1119 C.D. 2021
                                             : Argued:  May 7, 2024
Commonwealth of Pennsylvania,                :
Department of Transportation,                :
Bureau of Driver Licensing                   :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE WOJCIK                                      FILED:  May 30, 2024


        Jason A. Lizotte (Licensee) appeals the order of the Monroe County
Court of Common Pleas (trial court) dismissing his appeal from a 12-month
suspension of his operating privilege imposed by the Department of Transportation,
Bureau of Driver Licensing (Department), pursuant to Section 1547(b)(1)(i) of the
Vehicle Code,[1] based on his refusal to submit to a blood test in connection with his

---

[1] 75 Pa. C.S. §1547(b)(1)(i).  This statute, commonly known as the Implied Consent Law,
states:

> If any person placed under arrest for a violation of [Section 3802 of
> the Vehicle Code, 75 Pa. C.S. §3802,] is requested to submit to
> chemical testing and refuses to do so, the testing shall not be

**(Footnote continued on next page…)**

arrest for violating Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802 (relating to driving under the influence (DUI) of alcohol or a controlled substance). We affirm.

The facts of this case, as found by the trial court,[2] may be summarized as follows. On February 11, 2020, at approximately 11:06 p.m., Pennsylvania State Police Trooper Daniel Thompson (Trooper Thompson) was operating a marked vehicle near the intersection of Hamilton Road and Business Route 209 in Hamilton Township, Monroe County. Reproduced Record (RR) at 13a.[3] He first saw Licensee in the parking lot of a convenience store. *See id.* at 14a. He observed that Licensee's vehicle was going to exit the parking lot, but Licensee purposefully waited for the Trooper to leave the area in his car. *See id.* He then saw Licensee turn into the parking lot of the Old Mill Pub, and then exit the parking lot without signaling. *See id.* at 15a. Trooper Thompson made a U-turn and caught up to Licensee's vehicle, and saw the vehicle cross the double yellow center line and ride on the white fog line on the road. Based on his observation of the Vehicle Code violations, Trooper

conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person . . . for a period of 12 months.

[2] In a license suspension appeal, determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact finder. *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). As fact finder, the trial court may accept or reject the testimony of any witness in whole or in part. *Id.* In addition, we must view the evidence in a light most favorable to the party that prevailed before the trial court. *Id.* "Thus, we must determine the issue of whether a licensee refused chemical testing 'under the facts found by the trial court [and] not under the testimony [that one of the parties] prefers.'" *Id.* at 765-66 (citation omitted).

[3] Pa.R.A.P. 2173 states: "Except as provided in Rule 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the [R]reproduced [R]ecord by a small a, thus 1a, 2a, 3a, etc." Although the pagination of Licensee's Reproduced Record does not conform to the foregoing Rule, we will cite to the relevant pages as required by the Rule.

Thompson stopped Licensee's vehicle.[4]  *See id.*  After Licensee exhibited signs of intoxication during his execution of field sobriety tests, Trooper Thompson placed Licensee under arrest for suspicion of DUI and transported him to the Monroe County Correctional Facility (MCCF) for further processing.[5]  *See id.* at 14a, 16a,

---

[4] In relevant part, during the hearing on Licensee's suspension appeal, Trooper Thompson testified:

> Q.  And just going back, Trooper Thompson, what did you observe about [Licensee's] operation of his motor vehicle that gave you reason to stop it?
>
> A.  So, initially, I observed him in a parking lot at the Gas N Goods. It's like a little gas station convenience store that's off of Hamilton Road, right by the intersection I previously named.  I observed that vehicle as if it was going to exit the parking lot; however, it appeared that [Licensee], or the operator of that vehicle, had observed -- had seen my vehicle.  It was purposely waiting for me to leave the area before he was pulling out.
>
> Having said, I then -- I was on -- if you want to call it an off-ramp.  I was on the off-ramp, so I turned right, and then I observed the vehicle pull out behind my vehicle.  And then, the vehicle then conducted a left-hand turn into the Old Mill Pub, which is a little bar about a quarter mile north of that intersection that I had initially seen his vehicle.  The vehicle then failed to signal from that location as it went back the other way, as I conducted a U-turn ahead of that vehicle on a different intersection.
>
> Again, after I caught up to that vehicle, I observed the vehicle have its right-side tires on the right fog line of the roadway as it continued south.  And then it also crossed the center double yellow line as well.  The vehicle then turned left onto [Business Route] 209 as I initiated the traffic stop on the vehicle.

RR at 14a-15a.

[5] In pertinent part, Trooper Thompson testified:

**(Footnote continued on next page…)**

Q. And then you testified -- again it will be on [the Trooper's Motor Vehicle Recorder (MVR), admitted as Licensee's Exhibit 1], that after stopping the vehicle, [Licensee] was asked to perform standardized field sobriety testing?

A. That is correct.

Q. And you're trained in the administration of that test -- those tests?

A. Yes, I am.

Q. And do you recall what tests were afforded to [Licensee]?

A. Yes. So, the Horizontal Gaze Nystagmus [(HGN)] Test was administered. The Walk-and-Turn, the One-Leg [S]tand was also administered, as well as [the] Advanced Roadside Impaired Driving Enforcement [(ARIDE)] Test, and the Romberg Balance, and a Lack of Convergence Test.

Q. And based upon your training and your observations of [Licensee's] performance of these tests, you had reason to believe that he was under the influence of alcohol or a controlled substance?

A. That is correct.

Q. And did you place [Licensee] under arrest for those offenses?

A. That is correct.

Q. And after being arrested, he was transported to [MCCF] for further processing?

A. Yes, he was.

* * *

Q. Okay. You said in your reports that he was argumentative, isn't that correct?

A. Yes, it does indicate that he was argumentative.

**(Footnote continued on next page…)**

Q. When and how was he argumentative?

A. While speaking with him about the reasons for the traffic stop, and me having [a] conversation about him and him saying [that] he was familiar with the area; however, the errors in the driving and the directions, as well as, if I remember correctly, he was arguing about the way that I was conducting business, and during the field sobriety tests, how they were working, and this of that nature.

\* \* \*

Q. Okay. So, I'm asking before the K-9 was called?

A. Okay. So, again, while speaking to [Licensee], the vehicle violations, on top of while speaking with him, he was very talkative, his eyes were very watery, and I observed constricted pupils.

\* \* \*

Q. Okay. And did you provide [Licensee with] instructions for the Walk-and-Turn [T]est?

A. Yes, I did.

Q. Did you remember how many times you were interrupted while providing him [with] the instructions for the Walk-and-Turn [T]est?

A. How many times I was interrupted?

Q. Yes.

A. No, I don't have that documented.

Q. Okay. And what were his errors on the Walk-and-Turn [T]est?

A. On the Walk-and-Turn [T]est, during the instruction phase, he started too soon. During the first nine steps, he stepped off the line, he raised his arms, he stopped walking.

\* \* \*

**(Footnote continued on next page…)**

5

Q. That's fine. Take your time.

A. Okay. He had removed his coat and said it would be easier to keep his hands down, and then he stopped at step number three I have noted there.

Q. Taking his coat off, is that a sign of impairment?

A. No; however, interrupting the test, and stopping in conducting -- that would be.

* * *

Q. And you said that his eyes were constricted?

A. Yes.

Q. Was that during the tests?

A. While initially that I was talking to him, and then, I mean, what do you mean by during the tests, like, as far as me looking into his eyes, or, like, during the Walk-and-Turn Test?

Q. I'm going to walk you through this a little bit, trooper. You were giving him a test of a -- it was a test towards the end, it was probably part of the ARIDE battery test, and shining a light, and you said in the light, his eyes are constricted?

A. Correct.

Q. Okay. And would you agree with me that if light is shining into an eye, then it becomes constricted?

A. Yes. I believe I understand where you're leading to as far as me utilizing my flashlight so I can see his eyes. Generally, the way that I'll do that -- I would imagine you're familiar with the way that a flashlight works. Generally, there's a big center diameter of a bright light, and then on the outskirts there's, like, a lighter ambient glow, if that makes sense. Generally, I'll use that ambient glow so I could observe the eyes without actually affecting the way the eyes react.

**(Footnote continued on next page…)**

6

37a. At MCCF, Trooper Thompson read Licensee the warnings on Department Form DL-26[6] and, although Licensee signed the form, he refused to submit to chemical testing of his blood when asked to do so by Trooper Thompson.[7] *See id.* at 18a.

As a result, by notice mailed March 3, 2020, the Department informed Licensee that his operating privilege would be suspended for 12 months, effective

---

What I'm saying is I'm not directly shining the ball of brightness into the eyes for that exact reason.

RR at 15a-16a, 25a, 31a, .37a, 38a-40a.

[6] 3 The Form DL-26 "contains the chemical test warnings required by Section 1547 of the Vehicle Code, which are also known as the implied consent warnings." *Vora v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 743, 745 n.2 (Pa. Cmwlth. 2013).

[7] In relevant part, Trooper Thompson testified:

Q. After you read [Licensee] the warnings, did you request that he submit to a chemical testing of his blood?

A. Yes, I did.

Q. And at any time on February 11, 2020, did [Licensee] submit to a chemical testing of his blood at your request?

A. No, he refused to submit to the blood test.

Q. And when you say that he refused, do you recall how he refused? Was it affirmative? Was it silence?

A. I don't have anything documented that it was given to me in the form of anything other than a no. Normally, if it was something out of the ordinary as far as anything besides a yes or no, I would document that. In this case, I don't have anything documented saying it was given to me other than a verbal no.

RR at 18a.

April 7, 2020, pursuant to Section 1547(b)(1)(i) of the Vehicle Code based on his refusal to submit to a blood test on February 11, 2020. *See* Original Record Docket Entry (OR Dkt. #) 3. On March 5, 2020, Licensee filed a *pro se* appeal of the suspension in the trial court, but he failed to specify the legal or factual basis underlying his appeal of the Department's suspension. *See id.* at 1-2.

On April 15, 2021, the trial court conducted a hearing on Licensee's statutory appeal of the Department's 12-month suspension of his operative privilege under Section 1547(b)(1)(i) of the Vehicle Code. *See* RR at 9a-65a. Ultimately, on August 26, 2021, the trial court filed a Memorandum Opinion and Order dismissing Licensee's appeal.[8] Licensee then filed this appeal of the trial court's order.[9]

---

[8] In pertinent part, the trial court stated:

> Here, Trooper Thompson observed Licensee appear to avoid him initially and then fail to use a signal when he exited the Old Mill Pub. Licensee argues that touching the fog line and crossing the double yellow line, were *de minimis* infractions and insufficient to justify a traffic stop. We agree, however, the Trooper indicated that Licensee was purposely waiting for him to leave the area before pulling out. [RR at 14a-15a.] We considered all of the evidence, including the testimony of Trooper Thompson concerning Licensee's actions prior to the stop. Furthermore, during his testimony, Licensee does not dispute that he failed to use his turn signal when he exited the Old Mill Pub. Moreover, Trooper Thompson did not indicate that he stopped Licensee's vehicle simply because of him touching the fog line and crossing the double yellow line. Given the totality of the circumstances present in this case, we find that Trooper Thompson was justified in initiating the traffic stop.

Trial Ct. Op. 8/25/21 at 6.

[9] Our review is limited to determining whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Marino v. Department of Transportation, Bureau of Driver Licensing*, 703 A.2d **(Footnote continued on next page…)**

8

On appeal to this Court, Licensee argues:[10] (1) Trooper Thompson did not have reasonable grounds to ask Licensee to submit to chemical testing of his blood; and (2) Trooper Thompson's searches during the instant traffic stop were unreasonable.

To support the suspension of a licensee's operating privilege under Section 1547(b)(1)(i), the Department has the burden of proving that (1) the licensee was arrested for DUI by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of a vehicle while under the influence of alcohol in violation of Section 3802; (2) the licensee was asked to submit to a chemical test of his blood; (3) he refused to do so; and (4) the licensee was specifically warned that a refusal would result in the suspension of his operating privilege. *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). Once the Department meets its burden, the burden shifts to the licensee, who may avoid the mandatory license suspension by proving that (1) he was physically incapable of completing the requested testing; or (2) his refusal was not knowing and voluntary. *Id.* Whether a licensee's conduct constitutes a refusal to submit to chemical testing is a question of law. *Nardone v. Department of Transportation, Bureau of Driver Licensing,* 130 A.3d 738, 748 (Pa. 2015).

In addition:

> A police officer has reasonable grounds to request chemical testing if a reasonable person in the position of

---

1066, 1067 n.2 (Pa. Cmwlth. 1997). Our review over questions of law is plenary. *Deliman v. Department of Transportation, Bureau of Driver Licensing*, 718 A.2d 388, 389 n.1 (Pa. Cmwlth. 1998).

[10] In the interest of clarity, we reorder the claims raised by Licensee in this appeal.

9

the police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol. *Fierst v. Commonwealth*, [539 A.2d 1389 (Pa. Cmwlth. 1988)]. Whether reasonable grounds exist can only be decided on a case-by-case basis. *Department of Transportation*[, *Bureau of Traffic Safety*] *v. Dreisbach*, [363 A.2d 870 (Pa. Cmwlth. 1976)].

* * *

"Reasonable grounds" does not require a police officer to witness the driver driving his car. *See, e.g.*, *Menosky v. Commonwealth*, [550 A.2d 1372 (Pa. Cmwlth. 1988)]. In addition, the police officer's reasonable grounds will not be rendered void even if the belief is later discovered to be erroneous. *Keane v. Department of Transportation*, [561 A.2d 359 (Pa. Cmwlth. 1989)]. The police officer's belief must only be objective in light of the surrounding circumstances, and "the existence of reasonable alternative conclusions does not necessarily preclude [the arresting officer's] actual belief from being reasonable." *Id.* at [361].

*McCallum v. Commonwealth*, 592 A.2d 820, 822 (Pa. Cmwlth. 1991).[11]

---

[11] *See also Gasper v. Department of Transportation, Bureau of Driver Licensing*, 674 A.2d 1200, 1202 (Pa. Cmwlth. 1996), wherein we stated:

> The issue in this case is whether [the Department] met its burden of proving that the police had reasonable grounds to believe that [the licensee] was operating the vehicle, or in actual physical control of the movement of the vehicle while under the influence of alcohol or a controlled substance.
>
> The test applied for determining if reasonable grounds exist is not very demanding. Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, *could have concluded* that the motorist was operating, or was in actual physical control of the vehicle.

(Citations and footnotes omitted and emphasis added.)

10

Moreover:

> There is not a set list of behaviors that must be exhibited in order for an officer to have reasonable grounds. *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). Our case law has identified factors that constitute reasonable grounds. They include: a licensee who staggers or sways; has slurred speech; exhibits uncooperative behavior; or emits an odor of alcohol. *Id.* Where the arresting officer cites a driver's glassy eyes, there must be at least one other obvious physical sign of intoxication in order for the officer to have reasonable grounds for arrest. *Id.*

> On the other hand, the absence of one or more of the above-listed *Stancavage* factors does not mean the officer lacks reasonable grounds to believe a motorist has driven while intoxicated. In *Bruno v. Department of Transportation*, [422 A.2d 217, 218 (Pa. Cmwlth. 1980)], we found the officer had reasonable grounds even though the licensee did not emit an odor of alcohol. Likewise, passing a breath test does not foreclose a finding of reasonable grounds. *Matthews v. Commonwealth*, [540 A.2d 349, 351 (Pa. Cmwlth. 1988)]. The arresting officer may rely on behavior that indicates the presence of an entirely different chemical, such as a controlled substance, in determining whether he has reasonable grounds to request an additional blood test. *Id.*

*Farnack v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011).

As exhaustively outlined above, Trooper Thompson explained the myriad of objective factors underlying his reasonable suspicion that Licensee was driving his vehicle while under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code. *See* RR at 14a-16a, 25a, 31a, 37a, 38a-40a. Specifically, Trooper Thompson's observation of Licensee's direct violations of the Vehicle Code while operating his vehicle, coupled with the physical

11

manifestations of intoxication exhibited by Licensee during his performance of field sobriety tests, provides ample objective bases upon which Trooper Thompson could have concluded that Licensee was impaired by either alcohol or a controlled substance when he was operating his motor vehicle. *See, e.g.*, *Farnack*, 29 A.3d at 48-49 ("Here, [the officer] testified to several independent factors that led to his determination that [the l]icensee was driving under the influence of a controlled substance. They included red, glassy, and bloodshot eyes; difficulty speaking; inability to focus or maintain eye contact; and struggling with simple motor functions. Based upon his professional experience and the negative breathalyzer result, [the officer] believed that [the l]icensee was under the influence of a controlled substance.").[12] Based on the foregoing, it is clear that the trial court's determinations are amply supported by substantial evidence, and that the court did not err as a matter of law in dismissing Licensee's statutory appeal of this license suspension under Section 1547(b)(1)(i) of the Vehicle Code.

---

[12] In this regard, Licensee's reliance on *Schindler v. Department of Transportation, Bureau of Driver Licensing*, 976 A.2d 601 (Pa. Cmwlth. 2009), is misplaced. *See, e.g.*, *Kessler v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 1697 C.D. 2018, filed October 13, 2020), slip op. at 16, *appeal denied*, 244 A.3d 1229 (Pa. 2021), wherein we stated:

> *Schindler*, however, is factually distinguishable from this case. The licensee in *Schindler* did not smell of alcohol or exhibit bloodshot, glassy eyes, and he passed a preliminary breath test. The only indicator of intoxication was the licensee's unsteady gait and difficulty maintaining balance. Here, on the contrary, [the t]rooper testified to several factors indicating that [the l]icensee was under the influence of alcohol . . . . Consequently, we conclude that [the l]icensee's reliance on *Schindler* is misplaced.

*See also* Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. Non-precedential decisions . . . may be cited for their persuasive value.").

However, with respect to Licensee's second appellate claim, regarding the propriety of Trooper Thompson's searches beyond the request that Licensee submit to chemical testing of his blood, such a claim is patently beyond our review in this appeal of the Department's suspension of his operating privilege.[13] As the Supreme Court has explained:

> Properly viewed, the issue in the instant case, as it was in *Glass* [*v. Department of Transportation, Bureau of Traffic Safety*, 333 A.2d 768 (Pa. 1975)], is the power of the [Department] to suspend a driver's license, which is conferred by the [I]mplied [C]onsent [L]aw. That authority is not conditioned on the validity of the arrest which gives rise to the request for a breathalyzer test. . . . Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. The only fact necessary to the administrative determination is the driver's refusal to comply with the breathalyzer request after being taken into custody.

*Department of Transportation v. v. Wysocki*, 535 A.2d 77, 79 (Pa. 1987).

Indeed, as this Court has explicated:

> [The licensee] contends that because the [t]rooper had no reasonable suspicion of anything prior to the arrest, there is nothing in the law that authorized him to enter her residence to conduct an investigation without a warrant. These arguments are properly directed to the court of common pleas in a criminal proceeding since they relate to the ***legality*** of [the licensee's] arrest. They have no bearing in the context of a license suspension, which is a civil proceeding.

---

[13] It is well settled that this Court may affirm the trial court's order disposing of Licensee's appeal on any basis appearing in the record. *Conrad v. Department of Transportation, Bureau of Driver Licensing*, 226 A.3d 1045, 1057 (Pa. Cmwlth. 2020).

13

* * *

> [The licensee's] attempt to distinguish *Wysocki* is unavailing; the language quoted above is dispositive here. The legality of the underlying arrest, including the timing of [the trooper's] accompanying request to submit to chemical testing, is irrelevant to determining the propriety of [the] license suspension under the Implied Consent Law. It is sufficient that [the trooper] developed reasonable grounds to believe [the licensee] had committed a DUI offense at any point during their encounter. *See also Department of Transportation, Bureau of Traffic Safety v. Stewart*, [527 A.2d 1119, 1120 (Pa. Cmwlth. 1987)] ("The inquiry is not whether the officer, as he approached the scene, had reasonable grounds, rather it is whether, ***at any time*** during the course of interaction between the officer and [the licensee], the officer was given reasonable grounds to believe he was driving under the influence of alcohol.") (emphasis [in] original).

*Nornhold v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 59, 64 (Pa. Cmwlth. 2005) (emphasis in original and footnotes omitted).

Nevertheless, to the extent that Licensee's second appellate claim regarding Trooper Thompson's various searches should be addressed on the merits, after reviewing the record, Licensee's briefs and oral argument, and the relevant case law, we conclude that this issue has been ably resolved in the thorough and well-reasoned opinion of Judge Stephen M. Higgins. Accordingly, we would affirm the trial court's order on the basis of his opinion in the matter of *Jason A. Lizotte v. Department of Transportation, Bureau of Driver Licensing* (C.P. Monroe, No. 1934 CV 2020, filed August 26, 2021), if we were to reach the merits of Licensee's second appellate claim.

_____
MICHAEL H. WOJCIK, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason A. Lizotte,            :
                             :
             Appellant  :
                             :
          v.            : No. 1119 C.D. 2021
                             :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing     :

# **O R D E R**

AND NOW, this 30th day of May, 2024, the order of the Monroe County Court of Common Pleas dated August 26, 2021, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

JASON A. LIZOTTE,             :  NO.  1934 CV 2020

    Petitioner,               :

    vs.                        :

COMMONWEALTH OF PENNSYLVANIA,  :

DEPARTMENT OF TRANSPORTATION,  :

BUREAU OF DRIVER LICENSING,     :

                              :  LICENSE SUSPENSION

    Respondent           :  APPEAL

### STATEMENT PURSUANT TO Pa.R.A.P. 1925(a)

This matter concerns the Petitioner Jason A. Lizotte's appeal to the Pennsylvania Commonwealth Court regarding our dismissal of his Appeal from the Suspension of Operating Privileges ("Petition"). This Court scheduled a hearing on the Petition for April 15, 2021, and issued an Opinion and Order dated August 25, 2021, denying his Petition. Petitioner filed his appeal on September 24, 2021, and on September 27, 2021, we directed Defendant to file a concise statement of matters complained of on appeal. Defendant filed his statement on October 22, 2021. We believe that all of the Petitioner/Appellant's issues have been adequately addressed in our Opinion and Order dated August 25, 2021, accordingly, we find that nothing further needs to be determined and we respectfully request that the Superior Court affirm our decision in denying Defendant's License Suspension appeal.

BY THE COURT:

10.29.2021

**Date**

STEPHEN M. HIGGINS, J.

cc:    Robert Kopacz, Esquire
       John P. Troese, Esquire
       Prothonotary-Commonwealth Court

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

LIZOTTE JASON A,               :        No. 001934-CV-2020

Plaintiff/s,                   :

vs.                            :

COMMONWEALTH OF      :
PENNSYLVANIA
DEPARTMENT OF
TRANSPORTATION,
Defendant/s                    :

## NOTICE OF ENTRY OF (ORDER)(JUDGMENT)(VERDICT)(OPINION AND ORDER)

NOTICE IS GIVEN UNDER PENNSYLVANIA RULE OF CIVIL PROCEDURE 236(a)(2) THAT AN (ORDER)(JUDGMENT)(VERDICT)(OPINION AND ORDER) WAS ENTERED IN THIS CASE ON October 29, 2021.

GEORGE J. WARDEN, Prothonotary

By:_____
        Shirley Wood

cc:    ROBET KOPACZ, ESQ
       JOHN TROESE, ESQ
       PROTH