Dana **SPRECHER**, Appellant

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 17, 2014.

Decided Sept. 29, 2014.

---

Kelli B. Statt, Lemoyne, for appellant.

Philip M. Bricknell, Assistant Counsel, Harrisburg, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

Dana Sprecher appeals from the order of the Court of Common Pleas of Cumberland County (trial court) denying her statutory appeal from a one-year suspension of her operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Department) for her refusal to submit to a blood test. Sprecher argues that Pennsylvania's implied consent law of Section 1547(a) of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1547(a), violates the Fourth Amendment to the United States Constitution, U.S. Const. amend. IV, prohibiting an unreasonable search and seizure without a warrant.[1] In support, she relies on *Missouri v. McNeely*, — U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), in which the United States Supreme Court refused to adopt a *per se* exigency exception to the warrant requirement of the Fourth Amendment for a non-consensual blood test of a drunk-driving suspect. We find Sprecher's reliance on *McNeely* inapposite. Accordingly, we affirm.

The relevant facts found by the trial court are undisputed. On April 6, 2013 at approximately 1:15 a.m., Officer Scott Rood of the East Pennsboro Township Po-

1. Section 1547(a) and (b) of the Vehicle Code provides in relevant part:

    **(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be *deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance* if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

    (1) in violation of ... section 3802 (relating to driving under influence of alcohol or controlled substance)....

    ...

    **(b) Suspension for refusal.**—

    (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, *the testing shall not be conducted* but upon notice by the police officer, *the department shall suspend the operating privilege of the person* .... [Emphasis added.]

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article 1, Section 8 of the Pennsylvania Constitution, Pa. Const. art. I, § 8, also prohibits "unreasonable searches and seizures" without a properly issued warrant.

lice Department pulled over a Ford pickup truck driven by Sprecher after observing her truck weaving and crossing the fog line. Upon approaching the vehicle, the officer smelled alcohol and noticed that her eyes were bloodshot and glassy. Sprecher admitted to the officer that she had consumed alcohol. The officer attempted to administer a preliminary breath test (PBT), but she did not provide sufficient air into the machine. The officer then performed field sobriety tests, which indicated that she was intoxicated. The second PBT showed an alcoholic content of 0.19% in her blood, although she did not provide sufficient air. The officer placed her under arrest for driving under the influence of alcohol (DUI) and took her to the Cumberland County Prison where he read her the chemical testing warnings from the Form DL–26 and asked her to submit to a blood test. She refused to do so and refused to sign the Form DL–26. Subsequently, the Department notified her that her driving privilege was suspended for one year for her failure to submit to a blood test. She appealed the suspension to the trial court.

At a *de novo* hearing, the Department presented Officer Rood's testimony and a packet of documents to support the suspension. Sprecher testified that she told Officer Rood that she had knee problems and chronic bronchial problems, for which she was on inhalers and a prescribed medication. She further testified that she had worked in a prison in Camp Hill for 21 years and was distraught when she was taken to the prison. She stated: "I don't like needles. I was in a prison. I was scared. I don't understand why blood needed to be taken from me when I already participated in two [B]reathalyzers." Notes of Testimony at 22; Supplemental Reproduced Record at 30b.

After consideration of Officer Rood's testimony and a video showing the chemical testing warnings being given to Sprecher and her behavior at the prison, the trial court rejected her testimony as not credible. The court concluded that the Department met its burden to sustain the suspension, and that she failed to establish that her refusal to submit to chemical testing was not knowingly and consciously made or that she was physically incapable of submitting to chemical testing.[2] The court rejected her argument that Pennsylvania's implied consent law is unconstitutional under *McNeely*. The court noted that unlike in *McNeely*, she was not compelled to provide a blood sample after her refusal to submit to a blood test. The court accordingly denied her appeal.

■ Sprecher argues that Pennsylvania's implied consent law violates the Fourth Amendment prohibiting an unreasonable search and seizure without a warrant. She relies on the Supreme Court's statement in *McNeely* that "[w]e have never retreated ... from our recognition that any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests." *McNeely*, —

---

2. In a statutory appeal from a license suspension for a refusal to submit to chemical testing, the Department has the burden of establishing that the licensee (1) was arrested based upon reasonable grounds for the police officer to believe that the licensee was operating a motor vehicle while under the influence of alcohol or a controlled substance; (2) was asked to submit to chemical testing; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 348 (Pa.Cmwlth.2014). Once the Department has met its burden, the licensee must establish that the refusal was not knowingly and consciously made or that he or she was physically incapable of taking a chemical test. *Yourick v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 344 (Pa.Cmwlth.2009).

U.S. at ——, 133 S.Ct. at 1565. While acknowledging that *McNeely* was a criminal case, she maintains that the rationale behind the *McNeely* holding is equally applicable to a license suspension proceeding under the implied consent law.[3]

In *McNeely*, the driver was arrested for DUI and taken to the hospital for a blood test. He was given an implied consent warning that his refusal to voluntarily submit to the test would result in an immediate revocation of his driver's license. When he refused to consent to the test, the officer directed a lab technician to take a blood sample from him. The blood sample showed that the alcoholic content in his blood was well above the legal limit. After he was charged with DUI, he moved to suppress the results of the blood test, arguing that taking his blood without a search warrant violated his rights under the Fourth Amendment. The lower court agreed, concluding that the exigency exception to the Fourth Amendment's warrant requirement did not apply to a DUI case. The Missouri Supreme Court affirmed.

The issue before the United States Supreme Court in *McNeely* was whether the natural dissipation of alcohol in the bloodstream *per se* falls within the exigency exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in drunk-driving investigations. The State of Missouri acknowledged that under the exigency exception, the reasonableness of a warrantless search is evaluated based on the totality of circumstances. The State, however, sought an adoption of a *per se* rule that as long as a police officer has probable cause to arrest a drunk-driving suspect and a blood test is conducted in a reasonable manner, it is *per se* reasonable to obtain a blood sample without a warrant.

The Court first observed that a compelled physical intrusion beneath one's skin and into veins to obtain a blood sample for use as evidence in a criminal investigation implicates most personal and deep-rooted expectations of privacy. *McNeely*, —— U.S. at ——, 133 S.Ct. at 1558. The Court also noted that because an individual's alcoholic level gradually declines soon after he or she stops drinking, a delay to secure a warrant for a blood test will "negatively affect the probative value of the results." *Id.* at ——, 133 S.Ct. at 1561. The Court refused to adopt a *per se* rule and held that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically" and that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* at ——, 133 S.Ct. at 1563.[4]

■ The *McNeely* holding is inapplicable to this license suspension proceeding

---

**3.** Because Sprecher raises only the legal question of whether the implied consent law is constitutional under *McNeely*, our review of the trial court's order is plenary. *Whalen v. Dep't of Transp., Bureau of Driver Licensing*, 613 Pa. 64, 32 A.3d 677, 679 (2011).

**4.** In so holding, the *McNeely* Court noted advances made for the more expeditious processing of warrant applications by telephone or other electronic means, such as e-mail and video conferencing, and by use of standard warrant application forms, citing, *inter alia*, Rule 203(A) of the Pennsylvania Rules of Criminal Procedure, Pa. R.Crim.P. 203(A), which permits a use of "advanced communication technology . . . to submit a search warrant application and affidavit(s) and to issue a search warrant." *McNeely*, —— U.S. at ——, 133 S.Ct. at 1562. The Court also observed that a majority of states either place significant restrictions on obtaining a blood sample or prohibit nonconsensual blood tests altogether, as in Section 1547(b)(1) of the Vehicle Code. *Id.* at ——, 133 S.Ct. at 1566.

and does not support Sprecher's argument that the implied consent law violates the Fourth Amendment. As required by Section 1547(b)(1) of the Vehicle Code, a blood test was not conducted after she refused to submit to one. Thus, she was not subject to a warrantless search and, therefore, there was no violation of her rights under the Fourth Amendment. Where results of chemical testing are introduced as evidence *in a criminal trial,* it is properly excluded if it is found to be the fruit of an illegal arrest. *Dep't of Transp. v. Wysocki,* 517 Pa. 175, 535 A.2d 77, 79 (1987). The purpose of such exclusionary rule is "to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions." *Id.* The Legislature, however, did not intend to engraft the exclusionary rule onto the implied consent law. *Id.*

In Pennsylvania, operating a motor vehicle "is a civil privilege conferred on individuals who meet the necessary qualifications set forth in the Vehicle Code." *Commonwealth v. Stair,* 548 Pa. 596, 699 A.2d 1250, 1255 (1997). The objective of the implied consent law is to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the highways of this Commonwealth. *Kostyk v. Dep't of Transp.,* 131 Pa.Cmwlth. 455, 570 A.2d 644, 647 (1990). A prerequisite for holding an operating privilege is submitting to chemical testing when asked to do so by a police officer in accordance with the implied consent law. *Stair,* 699 A.2d at 1255. Drivers have "no constitutional right to refuse" to submit to a chemical test or to request a specific test. *Kostyk,* 570 A.2d at 647. There are "no constitutional infirmities" in the implied consent law of Section 1547 of the Vehicle Code. *Id.* at 648.

Accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this 29th day of September, 2014, the order of the Court of Common Pleas of Cumberland County in the above-captioned matter is AFFIRMED.