J. A04003/16

2016 PA Super 127

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                               :                PENNSYLVANIA
                  v.                  :
                                               :
JOHN ROBERT CARLEY, JR.,       :         No. 1820 WDA 2014
                                             :
                  Appellant     :


Appeal from the Judgment of Sentence, October 16, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0007537-2013


BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND SHOGAN, J.


OPINION BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 16, 2016**

John Robert Carley, Jr., appeals from the October 16, 2014 judgment of sentence resulting from his conviction of driving under the influence ("DUI") general impairment, driving while operating privileges suspended or revoked, and disorderly conduct.[1]  We affirm.

The trial court provided the following facts:

> The evidence at trial established that on February 27, 2013, the defendant drove a green Buick into the parking lot of the GetGo in Scott Township.  The defendant drew the attention of the clerk as he was walking around the store and going up to a kiosk to order food.  The clerk was eating a sandwich and the defendant approached her and asked what she was eating.  The clerk could smell an odor of alcohol and noticed that the defendant's eyes were red and glassy and his speech was slurred.

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and 1543(b)(1.1)(i), and 18 Pa.C.S.A. § 5503 (a)(1), respectively.

The defendant then returned to the kiosk, presumably to order food. At that time Carnegie Borough police officer Timothy Clark entered the store.

Officer Clark had come into the store for a drink and was informed by the clerk that the defendant had driven into the parking lot and appeared to be intoxicated. Officer Clark continued to observe the defendant visibly swaying and stumbling at the kiosk while attempting to order food. He also observed that the defendant's eyes were glassy. The clerk told the officer there is something up with that guy (indicating the defendant). Officer Clark contacted Scott Township police to investigate as the GetGo is located in Scott Township. The defendant was swaying back and forth at the kiosk but did [not] order any food. He then left the kiosk to exit the store. The Scott Township police arrived while the defendant was exiting the GetGo and Officer Clark stayed at the scene and observed the defendant struggle and fight with police after he was asked to provide identification.

Scott Township Police Officer Steven Spaniol was one of the officers to arrive at the scene as the defendant was exiting the store. He approached the defendant and noticed that he was disheveled, swaying and his eyes were glassy. The defendant had a strong odor of alcohol on his breath and appeared "very visibly intoxicated." Officer Spaniol asked the defendant whether the green Buick was his, and whether anyone accompanied him to the store. Officer Spaniol requested that the defendant make a call and get someone to pick him up. The defendant then got argumentative and started asking him questions. The defendant acknowledged that he had been drinking but continued to be confrontational and argumentative with police. Officer Spaniol then asked another Officer to stand by with the defendant while he went into the store to speak with the clerk and observe the store surveillance tape which clearly showed that the defendant drove into the lot and entered the store. When Officer Spaniol exited the

store to the parking lot the defendant was shouting derogatory remarks at officers. At that point he told the defendant he was under arrest for suspicion of driving under the influence. Field sobriety tests could not be performed because the defendant began to resist arrest and fought with officers upon being informed that he was being placed under arrest. It took four police officers to place him in handcuffs and he had to be carried to the patrol car after refusing to walk. He was then transported to St. Clair Hospital where he continued to be non-compliant and combative with commands. He was advised of his **O'Connell**[2] warnings and just stood there and screamed obscenities. He refused to submit to testing and had to be carried back to the patrol car.

Trial court opinion, 8/20/15 at 2-5 (citations omitted).

Appellant filed an omnibus pretrial motion with the trial court on February 11, 2014, in which he moved to suppress evidence and have the charges against him dismissed. The trial court held a suppression hearing on July 23, 2014, and held a non-jury trial immediately thereafter, incorporating the evidence presented at the suppression hearing. Neither the Commonwealth nor appellant introduced any additional evidence during trial, and the trial court found appellant guilty. On October 16, 2014, the trial court sentenced appellant to an aggregate term of 18-36 months' imprisonment.

Appellant filed a timely notice of appeal on October 30, 2014. On January 26, 2015, appellant filed a concise statement of errors complained

---

[2] **See Commonwealth, Dept. of Transp. v. O'Connell**, 555 A.2d 873 (Pa. 1989).

of on appeal pursuant to Pa.R.A.P. 1925(b). On August 20, 2015, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

> I. Whether the trial court erred in sentencing appellant pursuant to 75 Pa.C.S. § 3803(b)(4) and 75 Pa.C.S. § 3804(c) for his refusal to provide a sample of his blood where such constituted the exercise of a constitutional right?
>
> II. Whether the trial court erred in failing to suppress evidence of appellant's refusal to submit to extraction of his blood, or in admitting such where, by doing so, the Commonwealth was permitted to seek and obtain a conviction of appellant based, in part, on his exercise of a constitutional right?

Appellant's brief at 5 (capitalization omitted).

Appellant's argument relies heavily on the United States Supreme Court's holding in *Missouri v. McNeely*, ___ U.S. ___, 133 S.Ct. 1552 (2013), which he maintains extends a constitutional right to refuse to consent to chemical testing. Since both of appellant's issues aver that appellant was exercising a constitutional right by refusing to consent to chemical testing, we must first determine whether *McNeely* establishes a constitutional right to refuse to submit to chemical testing in a DUI investigation. Our cases prior to *McNeely* indicate that no such constitutional right is afforded. *See*, *e.g.*, *Commonwealth v. Beshore*, 916 A.2d 1128, 1141-1142 (Pa.Super. 2007) (*en banc*), *appeal denied*,

982 A.2d 509 (Pa. 2007) (holding that there is no constitutional right to refuse chemical testing under the Implied Consent Law).[3]

In **McNeely**, unlike in the instant appeal, the police directed a hospital lab technician to take a blood sample from Mr. McNeely, despite the fact that Mr. McNeely refused to consent to the blood draw and the police did not obtain a search warrant. **McNeely**, 133 S.Ct. at 1557. The Court ultimately held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." **Id.** at 1568.

In a civil context subsequent to **McNeely**, the Pennsylvania Commonwealth Court has held that an individual does not have the

---

[3] **(a)** **General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock)

75 Pa.C.S.A. § 1547.

constitutional right to refuse to consent to chemical testing. ***Faircloth v. Commonwealth, Dept. of Transp., Bureau of Driver Licensing***, 99 A.3d 583, 586 (Pa.Cmwlth. 2014), ***appeal denied***, 106 A.3d 727 (Pa. 2014); ***see also Sprecher v. Commonwealth, Dept. of Transp., Bureau of Driver Licensing***, 100 A.3d 768, 771-772 (Pa.Cmwlth. 2014) (stating that ***McNeely*** does not support an argument that the Implied Consent Law violates the Fourth Amendment).[4] This court recently considered the application of ***McNeely*** to the Implied Consent Law, but did not reach a conclusion as to whether a refusal of chemical testing is a constitutional right. ***See Commonwealth v. Myers***, 118 A.3d 1122 (Pa.Super. 2015).[5]

Our reading of ***McNeely*** in conjunction with subsequent Pennsylvania case law from the Commonwealth Court leads us to conclude that ***Beshore*** is still good law in Pennsylvania and that ***McNeely*** does not incorporate a constitutional right to refuse to consent to chemical testing in DUI cases.[6]

---

[4] Both ***Faircloth*** and ***Sprecher*** explicitly articulated that their respective holdings were limited only to the civil proceedings under the Implied Consent Law in which an individual's driving privileges are suspended for one year for refusal to consent to chemical testing. ***See Faircloth***, 99 A.3d at 585; ***Sprecher***, 100 A.3d at 772.

[5] The issue in ***Myers*** was limited to whether the trial court erred in holding that, despite the police having probable cause that the defendant was driving under the influence of an intoxicating substance, a warrant was required to obtain a blood sample for chemical testing. ***Id.*** at 1125.

[6] Commonwealth Court decisions, while not binding on this court, may be considered as persuasive authority. ***Commonwealth v. Rodriguez***, 81 A.3d 103, 107 n.7 (Pa.Super. 2013), ***appeal denied***, 91 A.3d 1238 (Pa. 2014).

Moreover, we note that **McNeely** is distinguishable from this case because herein the police did not order that a blood sample be taken from appellant without his consent. We, therefore, extend the Commonwealth Court's holdings in **Faircloth** and **Sprecher** to apply to criminal cases.

Having determined that **McNeely** does not extend a constitutional right to refuse to consent to chemical testing, we now address appellant's issues raised on appeal. In his first issue, appellant challenges the constitutionality of [75 Pa.C.S.A. §§ 3803(b)(4) and 3804(c)] and the legality, in general, of his sentence, because his sentence constituted criminal punishment for his refusal to provide a sample of his blood without a warrant. (Appellant's brief at 11.)

Appellant begins with a lengthy discussion of the majority/plurality opinion in **McNeely**.[7] His reliance on **McNeely** is misplaced. The issue in **McNeely** was limited to whether natural dissipation of alcohol in the bloodstream over time creates a "**per se** exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." **McNeely**, 133 S.Ct. at 1558. The Court made a very limited observation regarding states' implied consent laws in which the plurality noted that all 50 states have implied consent laws that "impose significant consequences when a motorist withdraws consent,"

---

[7] Parts I, II-A, II-B, and IV of the majority/plurality opinion **McNeely** set forth the opinion of the Court. **Id.** at 1556.

such a suspension or revocation of the motorist's driver's license or the admission of evidence of the motorist's refusal to consent to chemical testing in subsequent criminal proceedings.  *Id.* at 1566.[8]

We now address appellant's challenge to 75 Pa.C.S.A. §§ 3803(b)(4) and 3804(c).  Section 3803(b)(4) provides: "An individual who violates section 3802(a)(1) where the individual refused testing of blood or breath, or who violates section 3802(c) or (d) and who has one or more prior offenses commits a misdemeanor of the first degree.[[9]]"  75 Pa.C.S.A. § 3803(b)(4).  Section 3804(c) provides for an enhanced sentencing scheme for individuals who refuse to consent to chemical testing.

A similar challenge came before this court in ***Commonwealth v. Mobley***, 14 A.3d 887 (Pa.Super. 2011).  In ***Mobley***, we stated:

> Hence, it is evident that a breath/blood test refusal is not an element of DUI--general impairment. Nevertheless, ***Apprendi v. New Jersey***, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and its progeny maintain that any fact which increases the maximum penalty, except a prior conviction, requires proof beyond a reasonable doubt, regardless of whether the fact is labeled as an element of the offense or a sentencing factor. ***See also Commonwealth v. Aponte***, 579 Pa. 246, 855 A.2d 800, 811 (2004) ("in cases where the fact which increases the maximum penalty is not a prior conviction and requires a subjective assessment, anything less than proof beyond a reasonable doubt before a jury violates due process."). *Certainly, a*

---

[8] The discussion of implied consent laws is found only in a plurality part of the opinion.  *Id.* at 1556.

[9] These sections relate to driving while under the influence of alcohol.

> *refusal can result in changing both the grading of the general impairment offense and the sentence a person may receive; thus, a defendant must be put on notice of these possible enhancements. **See Aponte**, **supra** at 807-809; **Commonwealth v. Reagan**, 348 Pa.Super. 589, 502 A.2d 702, 705 (1985) (**en banc**); see also **Commonwealth v. Kearns**, 907 A.2d 649 (Pa.Super. 2006).*

**Id.** at 893 (emphasis added).

Appellant does not aver that he was not provided with warnings relating to his refusal to consent to chemical testing. Indeed, the record indicates that appellant received **O'Connell** warnings on two separate occasions while in police custody. (Notes of testimony, 7/23/14 at 46, 47.) Based on this court's previous finding in **Mobley**, we therefore find that appellant's first issue is without merit.

In his second issue, appellant avers that his constitutional right to refuse to consent to chemical testing was violated, and as a result, evidence of his refusal should have been suppressed by the trial court. (Appellant's brief at 29.) As discussed above at length, appellant did not have a constitutional right to refuse to consent to chemical testing, and therefore his second issue has no merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2016