IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MaryKate Elizabeth Gray,      :
             Appellant    :
                         :
            v.              :  No. 1759 C.D. 2016
                         :  No. 1760 C.D. 2016
Commonwealth of Pennsylvania,  :  Submitted: March 10, 2017
Department of Transportation,    :
Bureau of Driver Licensing      :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: June 9, 2017

          MaryKate Elizabeth Gray (Licensee) appeals an order of the Court of Common Pleas of Chester County (trial court) denying her appeals of two driver's license suspensions for refusing to submit to chemical blood testing on two occasions.[1]  Licensee contends that it is unconstitutional to compel an invasive blood test without a search warrant and, thus, the Commonwealth lacked a basis for suspending her driving privileges.  Discerning no merit to this contention, we affirm the trial court.

          On January 13, 2016, the Pennsylvania Department of Transportation (PennDOT) notified Licensee that her driver's license was suspended for 12 months for refusing to submit to chemical testing pursuant to Section 1547(b)(1)(i)

---

[1] Licensee's application for consolidation of her two statutory appeals was granted by this Court on January 19, 2017.

of the Vehicle Code[2] (Implied Consent Law) on December 15, 2015. On February 15, 2016, PennDOT sent Licensee a second notice that her driver's license was suspended for 18 months pursuant to Section 1547(b)(1)(ii) of the Vehicle Code for refusing to submit to chemical testing on February 1, 2016. Licensee appealed both suspensions to the trial court, which held two separate hearings on May 19, 2016.

At the first hearing, Officer Leah Cesenak testified about Licensee's refusal to undergo testing on December 15, 2015. Officer Cesenak explained that at approximately 4:00 p.m. that day, she was dispatched to a three-vehicle accident in which Licensee was involved. Officer Cesenak spoke to Licensee through the

---

[2] It establishes:

> (1) If any person placed under arrest for a violation of section 3802 [75 Pa. C.S. §3802] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
> > (i) Except as set forth in subparagraph (ii), for a period of 12 months.
> >
> > (ii) For a period of 18 months if any of the following apply:
> >
> > > (A) The person's operating privileges have previously been suspended under this subsection.
> > >
> > > (B) The person has, prior to the refusal under this paragraph, been sentenced for:
> > >
> > > > (I) an offense under section 3802 [75 Pa. C.S. §3802];
> > > >
> > > > (II) an offense under former section 3731 [75 Pa. C.S. §3731];
> > > >
> > > > (III) an offense equivalent to an offense under subclause (I) or (II); or
> > > >
> > > > (IV) a combination of the offenses set forth in this clause.

75 Pa. C.S. §1547(b)(1).

open driver-side window of Licensee's vehicle; in doing so, Officer Cesenak detected an odor of alcohol and saw that Licensee's eyes were glassy and bloodshot. Upon questioning, Licensee denied having consumed alcohol. After turning her attention elsewhere, Officer Cesenak returned to Licensee's vehicle. Licensee was chewing gum, and the vehicle smelled strongly of perfume or air freshener. This time Licensee stated to Officer Cesenak that she may have consumed a beer at lunchtime.

Officer Cesenak asked Licensee to do field sobriety tests and she failed all three tests.[3] Officer Cesenak then administered a portable breath test, which registered an amount of alcohol in excess of the legal limit. Licensee was arrested for driving under the influence (DUI). Licensee objected, stating she suffered from post-traumatic stress disorder (PTSD) and wanted to speak to her mother. Licensee did not resist when she was placed in handcuffs and driven to the hospital. However, at the hospital, Licensee refused to leave the patrol vehicle. Licensee informed Officer Cesenak that "she does not do needles and she was not giving blood." Hearing I of May 19, 2016 (5/19/16), Notes of Testimony at 10 (N.T. __).

Officer Cesenak read Licensee the implied consent warnings verbatim from the Implied Consent Form, DL-26. Licensee signed the acknowledgement that she received the warnings. Officer Cesenak testified that Licensee was calm throughout the entire process and did not raise her voice.

Regina Gray (Mother), Licensee's mother, testified about the December 2015 incident. She explained that Licensee lived with her and had left

---

[3] The tests included the horizontal gaze nystagmus test, a walk and turn test, and a one leg stand test.

3

the house to go to the store about 15 minutes before the accident. She maintained that Licensee did not smell of alcohol or appear inebriated when she left. Licensee telephoned Mother from the accident scene, explaining that she had been in an accident and was not sure if she had the financial responsibility identification card for the vehicle. Mother asked if she should come to the accident scene but Licensee responded that it was not necessary.

Mother also testified about Licensee's PTSD. Mother explained that Licensee was raped when she was 15 years old. This was followed by bullying at her school. Licensee also had problems with the school's social worker, who had told the parents of other students that because Licensee was unstable, it was not "a good idea for their children to be friends with [her] …." Hearing I of 5/19/16, N.T. 25. Then, in 2011, the social worker did an invasive search of Licensee that included touching her breasts.[4] This caused Licensee to become depressed and experience fainting and vomiting episodes. Licensee refused to return to school and was home-schooled for the remainder of the year.

Licensee suffered further traumas in college, including two separate rapes in her dormitory. The rapes were not prosecuted because Licensee had mistakenly agreed to let campus security and the college handle the situation. Ultimately, Licensee stopped attending classes and returned home.

Mother testified that these traumas have caused Licensee to have panic attacks in which she has difficulty breathing. Other times she withdraws into a trance. When Licensee is in a trance she cannot bear to be touched.

---

[4] Mother testified that Licensee was unjustly accused of possessing drugs at school, but it is unclear from the record if the body search was related to the drug possession accusation.

4

Mother noted that Licensee was unable to give Mother information about the arrest on December 15, 2015. The gaps in Licensee's knowledge led Mother to believe that Licensee had been in a trance during the arrest.

Ronald Lipkowitz, M.D., Licensee's psychiatrist, who began treating Licensee in 2011, also testified. He has diagnosed Licensee with PTSD, major depressive disorder, generalized anxiety disorder, panic disorder and agoraphobia. Licensee's PTSD involves flashbacks of past traumas, which triggers an altered state of mind that varies in intensity. Being placed under arrest could have triggered a flashback of the body search she endured in high school.

Dr. Lipkowitz testified that he has seen Licensee "go into flashbacks" on several occasions. Hearing I of 5/19/16, N.T. 41. Sometimes, Licensee appears to be sitting in a composed manner, but is actually unaware of her surroundings. He opined that Licensee underwent a "strong and all encompassing" flashback at the time of her arrest and could not have made a knowing and conscious refusal of the blood test. Hearing I of 5/19/16, N.T. 42. He conceded that if Licensee was under the influence of alcohol, it may have contributed to her having a flashback. However, he doubted that her refusal was caused by her consumption of alcohol.

The parties then proceeded to the second hearing, with Officer Christopher Stymiest testifying about Licensee's refusal to undergo chemical testing on February 1, 2016. On that day, he was dispatched to the scene of a one-vehicle accident, where he found a vehicle off the roadway and stopped at the top of a six-foot embankment. Licensee was alone in the vehicle. He helped her out of the vehicle and assisted her down the snow-covered hill. Mother, who lived two

5

blocks from the accident site, arrived at the scene following a telephone call from Licensee.

Officer Stymiest testified that Licensee smelled strongly of alcohol. He also observed that her speech was slurred and her eyes were red and watery. Licensee denied consuming alcohol and submitted to several field sobriety tests, which she failed. Officer Stymiest asked her to take a breath test, but she refused. He then placed her under arrest for suspicion of DUI. She pulled away slightly while he was putting her in handcuffs, but otherwise complied with his directives.

Licensee was transported to the hospital for a blood test, where she was reunited with Mother. Officer Stymiest read the Implied Consent Form, DL-26 to Licensee verbatim. She refused the blood test. He remained with her at the hospital for 90 minutes, giving her several opportunities to agree to the blood test. However, Licensee continued to refuse. Licensee did not inform him of any medical conditions that would prevent her from undergoing a blood test.

Mother again testified. Licensee called her within minutes of leaving the house to report she was in an accident. Mother insisted Licensee had been sober while she was at home.

At the scene, Mother observed Officer Stymiest help Licensee from the vehicle and down the hill. It was snow-covered and slippery. Licensee slipped several times and at one point lost her boot. She agreed that Licensee accepted Officer Stymiest's assistance willingly, *i.e.*, did not tell him not to touch her. Mother testified that it was obvious that Licensee "was in a full-on flashback" at the hospital. Hearing II of 5/19/16, N.T. at 14. Licensee would grab Mother, but then push her away. At one point, Licensee identified Mother as her high-school social worker and ordered Mother not to touch her. When Officer Stymiest read

6

the implied consent warnings, Licensee was "curled up in a ball crying." Hearing II of 5/19/16, N.T. at 17.

Doctor Lipkowitz again took the stand. He opined that Licensee was in an all-encompassing flashback at the hospital and incapable of giving meaningful consent to the blood test. He explained that Licensee's calling Mother by the name of the social worker supported his opinion that she was experiencing a flashback. He believed being arrested and placed in handcuffs triggered the flashback. As a result, she was not oriented to the situation.

The trial court asked Dr. Lipkowitz how it was possible to form an opinion within a reasonable degree of medical certainty about an episode he did not witness. Specifically, the trial court asked Dr. Lipkowitz how he could distinguish a real flashback from a fabricated flashback. Dr. Lipkowitz stated that he had not considered the idea of fabricated flashbacks. He deals with people in an office setting, not a criminal one, and to the best of his knowledge has never seen a fabricated flashback.

The trial court also asked Dr. Lipkowitz how he could be sure that alcohol did not play a role in Licensee's behavior. Dr. Lipkowitz explained that alcohol makes flashbacks more likely, "just like for some people blackouts, which are a form of dissociative reaction, [are] more likely to occur under the influence of alcohol." Hearing II of 5/19/16, N.T. at 40. However, he believed the trigger of being placed under arrest caused Licensee to have a flashback, regardless of any alcohol use.

One month after the hearings ended, the United States Supreme Court issued a decision in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016), holding that a driver suspected of DUI cannot be criminally sanctioned for

7

refusing a blood test unless a search warrant is obtained. Licensee filed a motion to enlarge the record in her license suspension appeals to include the criminal DUI charges pending against her. Licensee offered this information to establish that she was facing an enhanced criminal penalty for refusing to submit to blood testing and, thus, her suspension appeals should be sustained. The trial court denied Licensee's motion to enlarge the record.

The trial court dismissed Licensee's license suspension appeals. It held that Licensee was properly warned that her license would be revoked if she refused to consent to chemical testing and that Licensee, in both cases, did not prove that she was unable to make a knowing and conscious refusal due to a medical disability.

In its opinion, the trial court addressed *Birchfield*, in which the Supreme Court held the laws of two states to be unconstitutional because they imposed a criminal penalty for refusing a warrantless blood test. The trial court acknowledged that *Birchfield* may impact Licensee's criminal charges because Pennsylvania ties a criminal sentence to a defendant's blood alcohol concentration (BAC) level. In point, a driver with a BAC of .16% or higher is considered to be driving at the "highest rate of alcohol," which subjects the offender to a longer sentence. 75 Pa. C.S. §3802(c). A driver who refuses a blood test and is later convicted of DUI will be deemed to have been driving at the "highest blood alcohol" percentage. 75 Pa. C.S. §3804(c). The trial court noted that this enhanced criminal penalty may be unconstitutional under *Birchfield*; however, it

8

was irrelevant to the civil consequence of Licensee's refusal, which is governed by 75 Pa. C.S. §1547(a).[5]

Regarding the 2015 arrest, the trial court credited Officer Cesenak's testimony that Licensee had partially closed the vehicle window, placed gum in her mouth and used air freshener in the vehicle as evidence of a conscious attempt to mask the odor of alcohol. The trial court did not credit Licensee's evidence that she was suffering a PTSD flashback when placed under arrest or while at the hospital. Nor was the trial court persuaded by Dr. Lipkowitz that Licensee's mental disability prevented her from providing a knowing and conscious refusal to submit to chemical testing.

Regarding the 2016 arrest, the trial court found that Licensee's "conduct while at the hospital and her non-responsiveness to Officer Stymiest was

_____

[5] It provides:

(a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) [75 Pa. C.S. §1543(b)(1.1)] (relating to driving while operating privilege is suspended or revoked), 3802 [75 Pa. C.S. §3802] (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) [75 Pa. C.S. §3808(a)(2)] (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

75 Pa. C.S. §1547(a).

9

fabricated." Trial Court Op. at 20. The trial court noted that Licensee had the burden of proving her refusal was justified, but she declined to testify.

Licensee now appeals to this Court.[6] She does not challenge the trial court's factual findings. Instead, she argues that the police request that she submit to a warrantless blood draw was unconstitutional under *Birchfield*. She also challenges the trial court's denial of her motion to enlarge the record with copies of the two criminal informations filed by the district attorney on her DUI charges.

PennDOT responds that *Birchfield* has no impact in a Pennsylvania civil license suspension case. Accordingly, the trial court did not abuse its discretion in denying Licensee's motion to enhance the record.

In *Birchfield*, the U.S. Supreme Court issued three separate holdings. First, it held that taking a blood sample had Fourth Amendment implications[7] and, thus, requires a search warrant. Accordingly, it set aside one appellant's criminal conviction for refusing a blood test. Second, the Supreme Court held that because a breath test is less intrusive than a blood test, it does not implicate the Fourth Amendment and, thus, is a permissible search in a DUI case that does not require a warrant. Accordingly, it upheld the second appellant's criminal conviction for

---

[6] Our scope of review in a license suspension case is "whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *Department of Transportation, Bureau of Driver Licensing v. Gombocz*, 909 A.2d 798, 800 (Pa. 2006) (citation omitted).

[7] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

refusing a breath test. Third, the Supreme Court considered the blood test administered to the third licensee after he was advised by the police officer that a refusal would subject him to criminal prosecution. The Supreme Court remanded this matter to the state court to reevaluate whether licensee's consent was given freely in light of the inaccuracy of the police officer's advice.

*Birchfield* did not set aside implied consent laws, such as the one at issue here. The U.S. Supreme Court stated:

> Having concluded that the search incident to arrest doctrine does not justify the warrantless taking of a blood sample, we must address respondents' alternative argument that such tests are justified based on the driver's legally implied consent to submit to them. It is well established that a search is reasonable when the subject consents … and that sometimes consent to a search need not be express but may be fairly inferred from context[.] *Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.*
>
> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Birchfield*, ___ U.S. at __, 136 S. Ct. at 2185 (internal citations omitted) (emphasis added).

In *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017), this Court addressed the application of *Birchfield* to Pennsylvania's Implied Consent Law. In *Boseman*, the licensee, who was stopped by a police officer for speeding, attempted to perform three field

11

sobriety tests, all of which she failed. A portable breath test indicated the presence of alcohol. Initially, the licensee agreed to a blood test. On the way to the hospital she changed her mind and was driven to the police station. The licensee believed the police officer's directives were confusing, and she requested a blood test at the police station. Her request was declined. The trial court upheld the license suspension.

On appeal to this Court, the licensee argued, *inter alia*, that *Birchfield* barred her license suspension because the police officer did not obtain a warrant for the blood test. The licensee conceded that Pennsylvania does not impose a criminal penalty for refusing a blood test. However, the Vehicle Code does impose an enhanced criminal penalty where a licensee, who has refused a blood test, is convicted of DUI. The licensee argued that this enhanced criminal penalty required that her appeal suspension be sustained.

This Court rejected the argument. The licensee in *Boseman* was not similarly situated to any of the appellants in *Birchfield*, *i.e.*, she was not criminally prosecuted for refusing to submit to blood testing and was not told she would be criminally charged if she refused blood testing. Moreover, the Supreme Court specifically noted that its ruling did not extend to implied consent laws imposing civil penalties. *See Birchfield*, __ U.S. at __, 136 S.Ct. at 2185. ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." (internal citations omitted)). *Boseman* acknowledged that *Birchfield* may well impact the enhanced

12

penalty given to a licensee who refused a blood test in a criminal DUI conviction proceeding, but its holding was irrelevant to a civil license suspension.[8]

Boseman is dispositive of Licensee's appeal. The enhanced criminal penalties that may relate to her two DUI charges are irrelevant to her civil license suspension appeals. Consequently, the trial court did not err in refusing to include Licensee's criminal informations in the record.[9]

Accordingly, the order of the trial court is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

---

[8] Recently, in *Commonwealth v. Giron*, 155 A.3d 635 (Pa. Super. 2017), the Superior Court addressed the issue to which this Court eluded in *Boseman* and held that, based on *Birchfield*, a driver that refused to provide a warrantless blood sample could not be deemed to have driven at the highest blood alcohol rate, *i.e.*, there could not be an enhanced criminal penalty based solely on the refusal to consent to a blood test. Accordingly, the Superior Court remanded the case for resentencing.

[9] Moreover, if Licensee is convicted on the DUI charges, *Giron* establishes that she may not be subjected to an enhanced penalty based on her refusal to submit to a blood test.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| MaryKate Elizabeth Gray, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1759 C.D. 2016 |
| | : | No. 1760 C.D. 2016 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

# **O R D E R**

AND NOW, this 9th day of June, 2017, the order of the Court of Common Pleas of Chester County, dated September 16, 2016, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge

MaryKate Elizabeth Gray,      :
                  Appellant   :
                              :  No.  1759 C.D. 2016
            v.                :  No.  1760 C.D. 2016
                              :
Commonwealth of Pennsylvania, :  Submitted:  March 10, 2017
Department of Transportation, :
Bureau of Driver Licensing    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

CONCURRING OPINION
BY JUDGE McCULLOUGH                        FILED:  June 9, 2017


In *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016), the United States Supreme Court issued what is perhaps the most significant decision on implied consent laws to date and courts throughout the nation are presently dealing with its aftermath.  Recently, a three-judge panel of this Court addressed the *Birchfield* case in *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017).

Applying the rationale in *Boseman* to the matter at hand, it appears that precedent would instruct us to uphold the license suspension.  However, I believe that under *Birchfield*, the correct result in this case would be to conclude that the license suspension mandated by Pennsylvania's Implied Consent Law is illegal because it is an unconstitutional civil penalty imposed upon an individual's

exercise of the Fourth Amendment right to refuse consent to a warrantless search. *See generally* Section 1547 of the Vehicle Code, *as amended,* 75 Pa.C.S. §1547.

Typically, a blood test compelled by the state requires a warrant to search because the procedure is "an invasion of bodily integrity [that] implicates an individual's most personal and deep-rooted expectations of privacy." *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013) (plurality) (citation and internal quotation marks omitted). Under the Implied Consent Law, an individual is deemed to have given consent to a blood test, and if an individual refuses to submit to one, there are two consequences: (1) the individual will be subjected to an enhanced criminal sentence for a driving under the influence conviction; and (2) the Department of Transportation (Department) will suspend the individual's driver's license for a minimum of at least twelve months. 75 Pa.C.S. §1547(a)-(b). Prior to issuing a request to submit to a blood test, an officer is required to inform the individual that these are the civil and criminal penalties if he/she refuses the test, 75 Pa.C.S. §1547(b), and this advisory has been memorialized in writing by the Department in the "Form DL-26 Warnings." *See Yourick v. Department of Transportation, Bureau of Driver Licensing*, 965 A.2d 341, 344-45 (Pa. Cmwlth. 2009) (en banc).

Notwithstanding Pennsylvania's Implied Consent Law, as a general rule, actual consent is an exception to the warrant requirement. *Commonwealth v. Strickler*, 757 A.2d 884, 888-89 (Pa. 2000). However, "[c]onsent to a search must be voluntary" and "[i]nherent in the requirement that consent be voluntary is the right of the person to withdraw that consent." *State v. Halseth*, 339 P.3d 368, 371 (Idaho 2014). "In other words, implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires." *State v. Villarreal*, 475 S.W.3d 784, 800

(Tex. Crim. App. 2015). Also, where an individual has "a constitutional right" not to be searched absent a "warrant to search," a state may not criminalize the individual's "refusing to consent" to the search. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 540 (1967). In *Camara*, the defendant was "charged with a crime for his refusal to permit housing inspectors to enter his leasehold without a warrant," but "no warrant was obtained;" the defendant "had a constitutional right to insist that the inspectors obtain a warrant;" and the defendant, therefore, could "not constitutionally be convicted for refusing to consent to the inspection." *Id.*

Against the backdrop of these basic principles, the United States Supreme Court in *Birchfield* surveyed the states' implied consent laws and noted at the outset that "[i]n the past, the typical penalty for noncompliance was suspension or revocation of the motorist's license" and that "[t]he cases now before [it] involve laws that . . . make it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired." *Id.* at 2166-67.

In deciding the constitutionality of such implied consent laws under the Fourth Amendment, the Supreme Court considered whether warrantless blood tests "are justified" based on an individual's implied consent and concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2185-86. With respect to the first petitioner, an individual who "was criminally prosecuted for refusing a warrantless blood draw," the Supreme Court determined that the implied consent advisory issued by the officer effectively "threatened" the petitioner "with an unlawful search." *Id.* at 2186. Ultimately, or at least necessarily, the Court in *Birchfield* recognized a constitutional "right to refuse," *id.* at 2186, a police officer's request

to submit to a blood test when it reversed the first petitioner's conviction and credited his argument that "the Fourth Amendment prohibited criminalizing his refusal to submit to the [blood] test." *Id.* at 2170-71.

In *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016), the Pennsylvania Superior Court concluded that *Birchfield* was directly applicable to the Implied Consent Law, initially determining that "even though [the] law does not make the refusal to submit to a blood test a crime in and of itself, the law undoubtedly impose[s] criminal penalties on the refusal to submit to such a test." *Id.* at 331 (internal quotation marks omitted). In that case, the Superior Court held that a defendant's consent was involuntary when the defendant consented to the blood test only "after being informed, by the police, that refusal to submit to the test could result in enhanced criminal penalties," *id.*, and concluded that the DL-26 Form Warnings in this regard were legally "inaccurate." *Id.* at 331-32.

The Superior Court also applied *Birchfield* to the Implied Consent Law in *Commonwealth v. Giron*, 155 A.3d 635 (Pa. Super. 2017). There, the defendant refused the officer's request to submit to a blood test, and following the defendant's conviction for driving under the influence, the trial court imposed the enhanced sentence provided in the Implied Consent Law. On appeal, the Superior Court addressed the sentencing issue *sua sponte* and held that "pursuant to [*Birchfield*], a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties . . . ." *Id.* at 636. The Superior Court concluded that the defendant's sentence was illegal as a result of the enhanced penalty and vacated his judgment of sentence.

As noted, the Implied Consent Law simultaneously imposes two penalties on a violator for refusal: an enhanced criminal sentence and a license

suspension.  The decisions in *Birchfield*, *Evans*, and *Giron* collectively establish – if not expressly then as a natural corollary or through necessary implication – that an individual has the unconditional right to refuse a blood draw when threatened with the enhanced criminal sentence in the Implied Consent Law.  The present issue is whether an individual, while properly exercising this constitutional right of refusal, may nevertheless be inflicted with a civil penalty in the form of a license suspension under the Implied Consent Law.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."  *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).  The case law of the United States Supreme Court "reflect the obvious concern that there be no sanction or penalty imposed upon one because of his exercise of constitutional rights."  *Sherar v. Cullen*, 481 F.2d 945, 947 (9th Cir. 1973).  "In this context, 'penalty' is not restricted to a fine or imprisonment.  It means . . . the imposition of any sanction which makes assertion of the [constitutional] privilege 'costly.'"  *Spevack v. Klein*, 385 U.S. 511, 515 (1967) (citation omitted).  In *Sherar*, the court determined that adverse employment action "based solely upon a refusal to submit to an allegedly unwarranted and unreasonable [search], constitutes a penalty wrongfully imposed upon the exercise of fourth amendment rights."  *Id.* at 946.  Notably, unlike the federal constitution, Pennsylvania has an explicit constitutional provision, Article I, Section 26, PA. CONST. art. I, §26, that "safeguards the right not to be . . . punished for the exercise of a constitutional right."  *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corporation)*, 883 A.2d 518, 531 n.12 (Pa. 2005).

Here, MaryKate Elizabeth Gray (Licensee) refused to submit to a warrantless blood test, and based solely on that refusal, she suffered the mandatory and automatic consequence of having her license suspended for twelve months pursuant to Pennsylvania's Implied Consent Law. However, in face of the Law's threat of an enhanced criminal sentence, Licensee had a Fourth Amendment right to refuse the blood test under *Birchfield* and *Giron*. Licensee did indeed assert her constitutional right of refusal.

But Licensee's exercise of this right came at the price of a tremendous civil penalty. Unquestionably, many of Pennsylvania's citizens depend on their licenses and vehicles in order to attend work, visit friends and family members, and even purchase and transport food. Consequently, based upon the version of the DL-26 Form Warnings that the officer read, Licensee was placed in the untenable position of having to choose between asserting her constitutional right, and losing her driving privileges for a significant amount of time, or abandoning it and providing the Commonwealth with physical evidence that could be inculpatory. Regardless of whether the blood test is inculpatory or exculpatory, if Licensee submitted to one and was later convicted of driving under the influence, her license would not be suspended (zero months) assuming it is her first time offense. *See* Section 3704(e) of the Vehicle Code, 75 Pa.C.S. §3804(e). Under the Implied Consent Law, however, Licensee's refusal without a conviction automatically results in a twelve-month suspension.

When the choice above is pondered, I believe that the automatic twelve-month license suspension under the Implied Consent Law is a penalty that is "costly" enough, *see Spevack*, 385 U.S. at 515, to have a coercive or chilling effect upon the Fourth Amendment right of refusal, which is something the

Constitution plainly does not allow. "[T]he purpose underlying [the Implied Consent Law] is to enable the police to obtain evidence of intoxication or drug use to be utilized in criminal proceedings." *Commonwealth v. Kohl*, 615 A.2d 308, 314 (Pa. 1992). However, the Commonwealth, in threatening an individual with dual sanctions, both criminal and civil, cannot use the sanctions as a means by which to force the individual to submit to a warrantless blood test. This practice and procedure would "produce a result which [the Commonwealth] could not command directly. Such interference with constitutional rights is impermissible." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (citation and internal quotation marks omitted).

Although the Commonwealth has "a compelling interest in protecting its citizens from the dangers posed by drunk drivers . . . [t]he protections afforded to individuals under the Pennsylvania Constitution may not be diminished . . . by the Commonwealth's vigilance in promoting that interest." *Kohl*, 615 A.2d at 314. Therefore, if this case were considered against a clean and unwritten slate, I would conclude that the license suspension mandated by Pennsylvania's Implied Consent Law amounts to an unconstitutional civil penalty that jeopardizes the very existence of the Fourth Amendment right of refusal by punishing the exercise of that right.

In *Boseman*, a panel of this Court concluded that "*Birchfield* does not apply to implied consent laws that merely impose civil penalties" and emphasized that a license suspension case is civil and not criminal in nature. *Boseman*, 157 A.3d at 20. For further support, the panel quoted from the following passage from *Birchfield*: "Our prior opinions have referred approvingly *to the general concept of implied-consent laws that impose civil penalties . . . on motorists who refuse to*

*comply . . . .* [N]othing we say here should be read to cast doubt on them." 136 S. Ct. at 2185 (emphasis added, citations omitted). However, when this statement is considered in its proper context, it is clear that the *Birchfield* court was talking about the majority of the states whose implied consent laws impose *only* civil penalties. Indeed, the Supreme Court expressly noted that in most states "[s]uspension or revocation of the motorist's driver's license remains the standard legal consequence of refusal," and contrasted these states with the few states that impose criminal penalties. *Id.* at 2169.

Again, the Implied Consent Law in the Commonwealth of Pennsylvania imposes both *criminal* and *civil* and penalties, and the Superior Court has already concluded that *Birchfield* applies to the criminal aspect of the Implied Consent Law. Equally important, in *Birchfield*, the third petitioner's appeal came to the Supreme Court via an administrative proceeding where his license was suspended and, like Pennsylvania, the state's implied consent law imposed both criminal and civil penalties. *See* 136 S. Ct. at 2186 & 2172.

If *Birchfield* were as limited as the *Boseman* panel said it was, i.e., the decision only applies to criminal law cases, then the Supreme Court would have explicitly announced this conclusion or dismissed the third petitioner's appeal as improvidently granted. In other words, there would be no reason for the Supreme Court to consider the case or address it on the merits. But the Supreme Court did just that; more specifically, the Court vacated the license suspension and remanded for the state court to reevaluate whether the third petitioner's consent, due to the officer's warning conveying potential criminal penalties, was voluntary under the Fourth Amendment. 136 S. Ct. at 2172. Notably, in the proceedings below, the state's supreme court affirmed the license suspension, by concluding that the third

petitioner was not "coerced by the penalty for refusal" and "voluntarily consented to the blood test," *Beylund v. Levi*, 859 N.W.2d 403, 408 (N.D. 2015), *vacated by Birchfield*, 136 S. Ct. at 2186-87, and upheld the validity of the implied consent statute against "a constitutional right to refuse." *Beylund*, 859 N.W.2d at 413.

The Supreme Court in *Birchfield* also stated that it granted certiorari in three cases and consolidated them "in order to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime *or otherwise penalized* for refusing to take a warrantless test measuring the alcohol in their bloodstream." 136 S. Ct. at 2172 (emphasis added). Clearly, the Supreme Court's disposition of the third petitioner's license suspension case constituted the "otherwise penalized" portion of the Court's grant of certiorari. The fact that the Supreme Court vacated the third petitioner's license suspension on Fourth Amendment grounds, in and of itself, unequivocally demonstrates that *Birchfield* applies to Licensee's appeal from a license suspension in this case.

Moreover, the third petitioner in *Birchfield* decided to consent to the blood test after the officer's warnings, while Licensee here refused to take the blood test after the officer's warnings. This distinction, however, is immaterial as a practical matter because *Birchfield* teaches us that an individual cannot be "penalized," including with a license suspension, "for refusing to take a warrantless [blood] test . . . ." 136 S. Ct. at 2172 (emphasis added). As recounted above, the first petitioner in *Birchfield* also refused to submit to a warrantless blood test and the Supreme Court reversed his conviction, which strongly suggests that, as a remedy, the order suspending Licensee's license should be reversed and her license reinstated. *See also Giron*, 155 A.3d at 324.

When all of this is put together, I believe that *Birchfield*, and the Superior Court cases implementing that decision, provide only one answer with respect to the resolution of this case: Licensee's license suspension is illegal because it is an unconstitutional civil penalty imposed upon an individual's exercise of the Fourth Amendment right to refuse consent to a warrantless search. Although Pennsylvania's Implied Consent Law has withstood constitutional scrutiny under the Fourth Amendment by this Court, *see, e.g., Boseman*; *Faircloth v. Department of Transportation, Bureau of Driver Licensing*, 99 A.3d 583, 586 (Pa. Cmwlth. 2014); *Sprecher v. Department of Transportation, Bureau of Driver Licensing*, 100 A.3d 768, 771-772 (Pa. Cmwlth. 2014), I believe the dictates of the United States Supreme Court in *Birchfield* give us clear direction to now hold otherwise.

Because the three-judge panel deciding this case is bound by *Boseman*, I am constrained to concur in the result reached by the Majority. However, pursuant to the mandates of *Birchfield*, any license suspension imposed by the Department that is predicated solely on a licensee's refusal to submit to a blood test is unconstitutional.

_____
PATRICIA A. McCULLOUGH, Judge